*Selective Way Insurance Company v. Nationwide Property and Casualty Insurance Company, et al.*, No. 755, Sept. Term 2018.  Opinion by Arthur, J.

**LIABILITY INSURANCE—DAMAGES FOR BREACH OF DUTY TO DEFEND**

A liability insurer for a subcontractor has a duty to defend a suit against a general contractor where: the policy makes the general contractor an additional insured with respect to claims arising out of or caused by the subcontractor's work for the general contractor; and the allegations in the lawsuit demonstrate a potential that the damages resulted from the general contractor's supervision of the subcontractor's work.

In those circumstances, the insurer must provide a defense of all claims raised against the additional insured, notwithstanding alternative allegations for which there is no potentiality of coverage.  An insurer that breaches this duty is liable for the reasonable costs of defending the entire suit against the additional insured.

**EQUITABLE SUBROGATION—PRIMARY AND EXCESS INSURANCE**

Where an excess insurer pays for the defense that another insurer was primarily obligated to provide, the primary insurer must reimburse the excess insurer for the costs of defense, as well as the cost of litigation to establish the primary insurer's duty to defend.  In deciding whether one insurer is primary over another, the rights and liabilities of the insurers depend, as far as possible, upon the specific language of their policies.

**VERDICT SHEETS—PRESERVATION OF OBJECTION**

Under Md. Rule 2-522, if the court fails to submit any issue to the jury, all parties waive the right to a jury trial of the issue unless a party demands its submission to the jury before the jury retires.  No party may assign as error the refusal to submit a requested issue to the jury unless the party objects on the record before the jury retires, stating distinctly the matter to which the party objects and the grounds of the objection.

In this case, an insurer waived its contention that the court erred by omitting from the verdict sheet an issue regarding contractual notice, by failing to object to the omission.

**PREJUDGMENT INTEREST—ATTORNEYS' FEES AND RELATED EXPENSES**

A plaintiff is not entitled to prejudgment interest, as a matter of right, on the damages resulting from a liability insurer's breach of contract, in the form of reasonable and necessary attorneys' fees and other expenses incurred in defending a lawsuit against the insured.  Such a claim is unliquidated, because the amount is not fixed by agreement and

cannot be exactly determined by rules of arithmetic or law.  Therefore, a plaintiff's entitlement to prejudgment interest on the claim rests in the discretion of the fact-finder.

The court is not authorized to add prejudgment interest to damages awarded by the jury where the allowance of prejudgment interest is discretionary for the jury, but where the issue is not presented to the jury and the plaintiff does not request that the court submit the issue to the jury.

**ATTORNEYS' FEES AND RELATED EXPENSES—RIGHT TO JURY TRIAL**

The damages resulting from a liability insurer's breach of a contractual duty to defend include the attorneys' fees and expenses incurred in a declaratory judgment action to establish the insurer's duty to defend.  A breaching insurer can be held liable for the amount that would have put the insured in as good a position as it would have occupied had the insurer performed the contractual obligation from the beginning.

A breaching insurer is entitled to have the amount of those fees and expenses proven with certainty and under standards ordinarily applicable for proof of contractual damages.  Because those amounts are recoverable as part of the damages for breach of contract, the breaching insurer is entitled to demand that a jury determine the amount of damages.  The plaintiff bears the burden of proving, by a preponderance of the evidence, the amount of reasonable and necessary fees and expenses incurred by the plaintiff as a result of the insurer's breach.

Circuit Court for Baltimore County
Case No. 03-C-08-006273

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 755

September Term, 2018

_____

SELECTIVE WAY INSURANCE COMPANY

v.

NATIONWIDE PROPERTY AND
CASUALTY INSURANCE COMPANY, ET
AL.

_____

Arthur,
Shaw Geter,
Eyler, Deborah S.
    (Senior Judge, Specially Assigned),

JJ.*

_____

Opinion by Arthur, J.

_____

Filed: October 30, 2019

*Judge Kathryn G. Graeff did not participate in
the Court's decision to designate this opinion
for publication pursuant to Md. Rule 8-605.1.

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This case concerns a liability insurer's duty to defend. Under its policies, the insurer was obligated to defend a general contractor from claims with respect to work performed by four subcontractors. The insurer declined to defend the general contractor against a lawsuit based on allegations that its subcontractors performed defective work.

In a subsequent declaratory judgment action, the Circuit Court for Baltimore County determined that the insurer had been obligated to defend the general contractor in the construction-defect lawsuit. The court ordered the insurer to pay the costs of defense, in an amount decided by a jury. After the jury verdict, the court ordered the insurer to pay prejudgment interest on those defense costs. The court also ordered the insurer to pay all expenses incurred in the declaratory judgment action, in an amount decided by the court rather than by a jury. The insurer appealed.

For the reasons explained in this opinion, we shall affirm the judgment with respect to the insurer's obligation to pay defense costs from the construction-defect lawsuit; reverse the judgment with respect to the award of prejudgment interest by the court; and vacate the judgment with respect to attorneys' fees and expenses incurred in the declaratory judgment action. The case shall be remanded for a jury trial solely to determine the amount of attorneys' fees and expenses incurred in the declaratory judgment action as a result of the insurer's breach of the duty to defend.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Selective Way Liability Insurance for Questar's Subcontractors

In 2001, the Highpointe Business Trust engaged Questar Builders, Inc., to oversee the construction of the Highpointe Apartments in Hunt Valley. Construction was

completed in early 2004.

As the general contractor for the Highpointe project, Questar entered into contracts with dozens of subcontractors. Four of those subcontracts, executed between 2001 and 2003, are pertinent here. SEH Excavating Contractors, Inc., agreed to perform land development work for the project; Streett's Waterproofing, Inc., agreed to perform waterproofing work for certain buildings; Justice Waterproofing, Inc., agreed to perform waterproofing work for tennis courts above a parking garage; and King Carpentry Contractors, Inc., agreed to perform rough carpentry work for certain buildings.

Each subcontract required the subcontractor to indemnify Questar from claims for damages resulting from the subcontractor's work; to maintain commercial general liability insurance with "primary and noncontributory" coverage; and to name Questar as an "additional insured[]" under those policies.

For various policy periods between 2001 and 2007, those four subcontractors purchased commercial general liability insurance from appellant Selective Way Insurance Company. In the policies that it issued to the subcontractors, Selective Way promised to indemnify its insureds if they became legally obligated to pay damages based on claims covered by the policy and to defend the insureds in any lawsuit seeking those damages.

Each Selective Way policy included provisions extending this coverage to an additional party if the named insured entered into a written contract requiring it to provide insurance for that additional party. These provisions specified that any party that became an additional insured because of a contract would be treated as an insured "only with respect to" the named insured's work for that additional party. The policies further

2

specified that the coverage resulting from such a contract would be "primary and not contributory" with respect to the additional insured, if the contract so required.

Through the combined effect of these policies and subcontracts, Selective Way became Questar's insurer with respect to claims against Questar arising out of the work performed at the Highpointe project by SEH Excavating Contractors, Streett's Waterproofing, Justice Waterproofing, or King Carpentry Contractors.

**B.      The Construction-Defect Lawsuit against Questar**

In a transaction that coincided with the completion of construction, a third party purchased the Highpointe Apartments. On July 13, 2006, the purchaser filed a lawsuit based on "the defective construction of the Highpointe Apartments" by Questar. As amended, the complaint asserted four counts against Questar and two executives.

Each count against Questar rested on allegations that it had failed to properly oversee the work of its subcontractors and that defects in the construction resulted in extensive water infiltration throughout the buildings. The purchaser sought to recover $4.5 million for the property damage allegedly caused by Questar's conduct.

To undertake its defense, Questar turned to its liability insurers: Nationwide Property and Casualty Insurance Company and Nationwide Mutual Insurance Company (collectively, "Nationwide"). Nationwide agreed to defend Questar under a reservation of rights, appointing and paying for counsel to represent Questar separately from the other defendants.

Questar denied liability, but also filed a third-party complaint, seeking indemnity or contribution from 26 subcontractors that performed work at the Highpointe project. In

3

the third-party complaint, Questar claimed that, if it were found liable in the construction-defect lawsuit, then the subcontractors should be liable to it for all or some of its liability to the purchaser. The third-party defendants included the four subcontractors that Selective Way insured.

On April 1, 2008, Questar's attorney made written requests for defense and indemnification under the policies issued by Selective Way. Selective Way's parent corporation denied the requests under the policies issued to Streett's Waterproofing and SEH Excavating Contractors. The denial letters cited a lack of "proof" or "evidence" that the subcontractor's work caused the alleged damages, stated that it was "not clear when the work was completed or when the damages manifested[,]" and noted that the lawsuit also involved "separate allegations of negligence" by Questar itself. Questar received no formal denial letters under the policies issued to the other two subcontractors.

### C.    Nationwide's Declaratory Judgment Action Against Various Insurers

The present action was commenced on June 10, 2008, when Nationwide filed a complaint for a declaratory judgment in the Circuit Court for Baltimore County, seeking to "determin[e] insurance coverage under various policies of insurance covering [Questar]." Nationwide initially named 21 insurance companies as defendants, along with 24 subcontractors and Questar itself. The number of defendants varied over time, as Nationwide added new defendants and dismissed claims against others.

Nationwide alleged that Questar was an additional insured under various liability insurance policies issued to Questar's subcontractors. Thus, Nationwide asked the court to declare that, under those policies, the insurers were obligated to provide a defense for

4

Questar in the construction-defect lawsuit. Nationwide contended that its own coverage for Questar was secondary to the primary coverage issued by those insurers. It sought reimbursement for all defense costs incurred in the construction-defect lawsuit.

In its answer, Selective Way asserted that it had no duty to defend Questar in the construction-defect lawsuit and that "Questar and/or Nationwide ha[d] failed to provide adequate notice" to Selective Way. Selective Way demanded a jury trial on all issues.

While the declaratory judgment action was still in its early stages, Questar agreed to settle the construction-defect lawsuit.

As the declaratory judgment action proceeded, the court granted Nationwide's motion to bifurcate the issues. The court would first decide whether the defendant-insurers had a duty to reimburse Nationwide for defense costs. If necessary, the court would then proceed to determine the amount of damages that Nationwide was entitled to recover.

In 2009, Nationwide moved for summary judgment as to the liability of 12 insurers, including Selective Way, which had issued polices to Questar's subcontractors. Nationwide argued: that each of those insurers breached a contractual duty to defend Questar in the construction-defect lawsuit; that Nationwide's insurance policies provided excess coverage over the primary coverage issued by those insurers; and that Nationwide became subrogated to Questar's rights against those insurers when Nationwide paid for Questar's defense. Nationwide contended that, as a matter of law, those insurers were obligated to reimburse Nationwide for all costs incurred in defending Questar.

The 12 insurers collectively opposed Nationwide's motion for summary judgment

5

and moved for summary judgment in their favor. Primarily, they argued that they were relieved of any duty to defend because Questar had failed to notify them until 16 months after the filing of the construction-defect lawsuit. They further argued that Nationwide acted with "unclean hands" by controlling the entire defense during the period of delay. Selective Way and other insurers also filed individualized responses and cross-motions to address issues specifically related to their respective policies.

Eventually, in 2014, the court issued an order granting Nationwide's summary judgment motion in part, denying it in part, and denying various cross-motions. The court determined that each of the 12 insurers, including Selective Way, "had a duty to defend Questar because the allegations in the underlying lawsuit raised claims that potentially arose from the [s]ubcontractors' work at the Highpointe Apartments." The court determined, however, that "triable issues of fact" remained "as to whether the [d]efendants were prejudiced by delayed notice and whether Nationwide ha[d] unclean hands[.]"

## D. Jury Trial on Selective Way's Obligation to Pay Defense Costs

Before and after the summary judgment ruling, Nationwide reached settlements with the insurers for all of the subcontractors except Selective Way. Hence, the case proceeded towards a trial on Nationwide's claims against Selective Way.[1]

Nationwide made a second summary judgment motion relating solely to Selective Way's liability. The court granted the motion in part, rejecting the defense of unclean

---

[1] Selective Way did not assert any cross-claim against other insurers.

6

hands. The court determined, however, that a genuine dispute of material fact remained as to whether Selective Way sustained actual prejudice because of delayed notice.

A few weeks before the trial in March of 2017, Selective Way filed a barrage of motions raising arguments that either had been raised or could have been raised in its earlier memoranda.[2] The court deferred its ruling on those issues pending a motion for judgment made during the trial.

The scope of the jury trial was limited to determining whether Selective Way was prejudiced by the receipt of untimely notice and, if it was not, how much Selective Way was obligated to pay in damages to compensate Nationwide for the expense of defending the construction-defect lawsuit. The trial did not include the separate issue of how much Selective Way might be obligated to pay in additional damages to compensate Nationwide for the expense of proving that Selective Way breached the duty to defend.

Claims adjusters from both insurance companies testified concerning the issue of delayed notice. Nationwide presented testimony from the attorneys who represented Questar and from an expert who opined that the fees charged were fair and reasonable. Selective Way countered with its own expert, who opined that the billing records were deficient because they did not detail how many of the hours were related to construction work performed by each individual subcontractor. The court denied the parties' motions for judgment at the close of all evidence.

---

[2] In an apparent effort to circumvent the scheduling order, Selective Way titled most of these motions as "motions in limine" even though none concerned the admissibility of evidence. Selective Way also asked for leave to file another summary judgment motion.

Both parties submitted competing proposals for extensive non-pattern jury instructions and special verdict sheets. The court ultimately adopted a verdict sheet based on those written proposals and on oral arguments made on the final day of trial.

Answering the questions on the verdict sheet, the jury first found that Selective Way had received timely notice of the lawsuit against Questar. The jury also found, by a preponderance of evidence, that Nationwide had proven total damages of $994,719.54.

Finally, the jury answered two questions about the "apportion[ment]" of defense costs. Selective Way had proposed a question asking the jury whether it found "by a preponderance of the evidence, that the costs were readily apportionable" among the various subcontractors. Nationwide had suggested that, if the court included the question proposed by Selective Way, then it should also ask the jury whether it found "by a preponderance of the evidence, that Nationwide was required to apportion the costs to each subcontractor[.]" The court included both questions on the verdict sheet. In response, the jury found that the defense costs were "readily apportionable," but that Nationwide was not "required to apportion" those costs.

After the verdict, the court formally dismissed Nationwide's remaining claims against any parties other than Selective Way. The clerk of the circuit court sent notice of the entry of a "judgment" against Selective Way and in favor of Nationwide in the amount of $994,719.54. At the time of the "judgment," the court had not yet decided how much in additional fees and expenses Nationwide could recover in proving that Selective Way breached its duty to defend.

Selective Way moved for a declaration stating that it was not liable for any

8

damages. It argued that the jury's finding that defense costs were "readily apportionable" defeated Nationwide's right to recover defense costs that were not apportioned to the subcontractors that obtained insurance from Selective Way. In the alternative, Selective Way moved for judgment notwithstanding the verdict. Selective Way also filed a notice of appeal, which this Court dismissed as premature, because the circuit court had not yet determined the amount of fees to which Nationwide was entitled in successfully establishing that Selective Way had breached its duty to defend.

     E.     **Awards for Prejudgment Interest and for Expenses Incurred in the Declaratory Judgment Action**

When the case returned to the circuit court after the dismissal of Selective Way's premature appeal, Nationwide made a "Motion for Attorneys' Fees," asking the court to determine Selective Way's liability for the fees and expenses incurred in the declaratory judgment action. Nationwide submitted an affidavit from its attorney; an affidavit from an expert on legal fees; and a summary of invoices that it had paid.

Opposing the motion, Selective Way argued that it was entitled to a jury trial, or at least a formal evidentiary hearing, regarding the attorneys' fees and expenses incurred in the declaratory judgment action. Selective Way disputed the assertions that all fees and expenses claimed were necessary and reasonable. It argued that Nationwide was not entitled to recover all fees and expenses sought, because much of the work performed by Nationwide's attorneys was unrelated to the claim against Selective Way.

Shortly before the hearing on Nationwide's motion for attorneys' fees, Nationwide wrote a letter asking the court to award $430,534.82 in prejudgment interest on the

9

damages previously found by the jury. Nationwide asked the court to calculate prejudgment interest at the legal rate of six percent, from the end of the construction-defect lawsuit in 2009 until the date of the upcoming hearing on attorneys' fees. In response, Selective Way argued, among other things, that the jury should have decided whether to award prejudgment interest as part of its verdict and that the court could not award prejudgment interest after the verdict.

At a hearing solely on the motion for attorneys' fees, the court rejected Selective Way's request for a jury trial or an evidentiary hearing. The court proceeded to grant the motion based on the parties' written submissions and the oral arguments made at the hearing. The court awarded Nationwide $810,556.72, the full amount it had requested.

On May 2, 2018, the court filed a separate document titled "Order and Declaratory Judgment." The court declared that Selective Way owed a duty to defend Questar in the construction-defect lawsuit under policies issued to Questar's subcontractors between 2001 and 2007. The court determined that Selective Way was liable in the amounts of: $994,719.54 for defense costs in the construction-defect lawsuit; $430,534.82 for prejudgment interest on those defense costs; and $810,556.72 for attorneys' fees and expenses incurred in the declaratory judgment action. The court reduced Selective Way's total liability by $588,152.00, to account for the amounts that Nationwide had received from settlements with other insurers. In aggregate, the court granted judgment in the

amount of $1,647,659.00 against Selective Way in favor of Nationwide.[3]

Selective Way made a timely motion to alter or amend the judgment, asking the court to set aside the award of prejudgment interest. Selective Way also renewed its prior requests for a judgment entirely in its favor. The court denied Selective Way's post-judgment motions. Meanwhile, Selective Way noted this timely appeal.

## DISCUSSION

Selective Way's brief raises 12 questions and various sub-questions. The full list is reproduced in the appendix to this opinion. This opinion will address all issues raised by Selective Way, but not in the order in which those issues were presented.

First, this opinion will address challenges to the declaratory judgment that Selective Way owed a duty to defend Questar in the construction-defect lawsuit. Second, this opinion will address challenges to the determination of damages for the costs incurred by Nationwide in defending Questar. Because we see no merit to those challenges, we shall affirm the judgment with respect to the declaration of rights and the award of damages in the amount of $994,719.54.

Next, this opinion will address the award of prejudgment interest on the damages found by the jury. In the circumstances of this case, we conclude that the court erred in awarding prejudgment interest that was not separately stated in the jury's verdict. Therefore, we shall reverse the award of $430,534.82 for prejudgment interest.

---

[3] The damages, minus the amounts that Nationwide had received from other insurers, actually equaled $1,647,659.08. The court rounded the judgment down by eight cents.

11

Finally, this opinion will address the award of $810,556.72 for attorneys' fees and expenses incurred by Nationwide in the declaratory judgment action. Because we conclude that Selective Way was entitled to a jury trial on that element of damages, we shall vacate that part of the judgment. The case shall be remanded for a jury trial solely to determine the amount of reasonable and necessary attorneys' fees and expenses incurred by Nationwide in the declaratory judgment action as a result of Selective Way's breach of its duty to defend.

## I. Declaratory Judgment Regarding Selective Way's Duty to Defend

Selective Way contends that the circuit court erred when it granted partial summary judgment and, ultimately, a declaratory judgment in favor of Nationwide. Selective Way contends that the court was "incorrect" in determining that Selective Way owed a duty to defend Questar in the underlying construction-defect lawsuit. We review these matters de novo. *See, e.g.*, *James G. Davis Constr. Corp. v. Erie Ins. Exch.*, 226 Md. App. 25, 34-35 (2015). As explained below, the court's determinations were correct.

## A. The Contractual Duty to Defend Under a Liability Insurance Policy

An "insurer's duty to defend is a contractual duty arising out of the terms of a liability insurance policy." *Litz v. State Farm Fire & Cas. Co.*, 346 Md. 217, 225 (1997). "Under the typical liability insurance policy," the insurer must "indemnify the insured . . . for the payment of a judgment based on a liability claim which is covered" by the policy and must "defend the insured against a liability claim which is covered or which is potentially covered" by the policy. *Mesmer v. Maryland Auto. Ins. Fund*, 353 Md. 241, 257 (1999). The dual promises to defend and indemnify the insured are "the

12

consideration received by the insured for payment of the policy premiums." *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 409 (1975). This type of insurance "is in effect 'litigation insurance' procured by an insured to protect the insured 'from the expense of defending suits brought against [it].'" *Aetna Cas. & Sur. Co. v. Cochran*, 337 Md. 98, 110 (1995) (quoting *Brohawn v. Transamerica Ins. Co.*, 276 Md. at 410).

The Court of Appeals has "consistently held that the duty to defend should be construed liberally in favor of the policyholder." *Springer v. Erie Ins. Exch.*, 439 Md. 142, 167 (2014). The insurer has the duty to defend the insured from all claims that are "potentially covered" by the policy. *See, e.g.*, *Walk v. Hartford Cas. Ins. Co.*, 382 Md. 1, 15 (2004). Thus, "'[e]ven if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a *potentiality* that the claim could be covered by the policy.'" *Id.* at 16 (emphasis in original) (quoting *Brohawn v. Transamerica Ins. Co.*, 276 Md. at 408). Under this rule, "'any potentiality of coverage, no matter how slight, gives rise to a duty to defend.'" *Litz v. State Farm Fire & Cas. Co.*, 346 Md. at 226 (quoting Andrew Janquitto, *Insurer's Duty to Defend in Maryland*, 18 U. BALT. L. REV. 1, 13-14 (1988)). "[W]here a potentiality of coverage is uncertain from the allegations of a complaint, any doubt must be resolved in favor of the insured." *Aetna Cas. & Sur. Co. v. Cochran*, 337 Md. at 107. Because the "duty to defend is broader than the duty to indemnify[,]" a liability insurer "will be obligated to defend more [suits] than it will be required to indemnify[.]" *Litz v. State Farm Fire & Cas. Co.*, 346 Md. at 225.

For a suit to trigger the insurer's duty to defend, the plaintiff "need only *allege*

13

action that is *potentially covered* by the policy, no matter how attenuated, frivolous, or illogical that allegation may be." *Sheets v. Brethren Mut. Ins. Co.*, 342 Md. 634, 643 (1996) (emphasis in original). The plaintiff in the underlying suit need not "allege every fact necessary to establish [the insurer's] coverage," as long as the allegations sufficiently indicate that "the injury in question was caused by some act or omission covered by the terms of the contract." *U.S. Fid. & Guar. Co. v. National Paving & Contracting Co.*, 228 Md. 40, 54-55 (1962). An insurer may have a duty to defend "even though the claim asserted against the insured cannot possibly succeed because either in law or in fact there is no basis for a plaintiff's judgment." *Litz v. State Farm Fire & Cas. Co.*, 346 Md. at 225 (citations and quotation marks omitted).

An insurer breaches its duty to defend if it refuses to defend a suit where a claim is potentially covered by the policy. *See Mesmer v. Maryland Auto. Ins. Fund*, 353 Md. at 258. A cause of action against an insurer for breach of the duty to defend "sounds in contract" (*Vigilant Ins. Co. v. Luppino*, 352 Md. 481, 488 (1999)) and is "governed by the principles applicable to breach of contract actions." *Luppino v. Vigilant Ins. Co.*, 110 Md. App. 372, 381 (1996), *aff'd*, 352 Md. 481 (1999). The "damages for breach of the contractual duty to defend are . . . the insured's expenses, including attorney fees, in defending the underlying tort action, as well as the insured's expenses and attorney fees in a separate contract or declaratory judgment action . . . to establish that there exists a duty to defend." *Mesmer v. Maryland Auto. Ins. Fund*, 353 Md. at 264.

**B.** **Duty to Defend a General Contractor Under Liability Insurance Policy Issued to Subcontractor**

On two occasions, this Court has held that a liability insurer was obligated to defend a general contractor where, as here, the policy for a subcontractor made the general contractor an additional insured with respect to claims arising out of the subcontractor's work. *James G. Davis Constr. Corp. v. Erie Ins. Exch.*, 226 Md. App. 25 (2015), *cert. denied*, 446 Md. 705 (2016); *Baltimore Gas & Elec. Co. v. Commercial Union Ins. Co.*, 113 Md. App. 540 (1997). Both cases are instructive here.

In the older case, the subcontractor performed excavation work for a public utility company. *Baltimore Gas & Elec. Co. v. Commercial Union Ins. Co.*, 113 Md. App. at 547-48. The subcontractor's liability insurance policy made the utility an additional insured, but "specified that, as an additional insured, [the utility] was protected only with respect to liability arising out of" the subcontractor's work for the utility. *Id.* at 557. The policy excluded coverage for claims arising out of the utility's own acts or omissions, other than its supervision of the subcontractor. *Id.* at 558.

A plaintiff who sustained injuries at the excavation site sued the utility and the subcontractor for damages. *Baltimore Gas & Elec. Co. v. Commercial Union Ins. Co.*, 113 Md. App. at 548. The plaintiff alleged that "the negligent, careless and reckless construction activities of the [d]efendants, their agents, servants and employees" caused the plaintiff's injuries. *Id.* at 561-62. These "general" allegations did not "specify the particulars of the negligence claim" against the utility, but rather "include[d] a claim against [the utility] grounded on derivative liability, based on [the utility's] failure to

15

supervise its agents, and a claim of liability based on its own conduct." *Id.* at 562. The Court was "amply satisfied" that these allegations created the potentiality for coverage, and thus that the subcontractor's insurer had a duty to defend the utility (*id.* at 562-63) until the plaintiff dismissed the claims against the subcontractor. *Id.* at 576.

This Court construed slightly different terms in *James G. Davis Construction Corp. v. Erie Insurance Exchange*, 226 Md. App. 25 (2015). In that case, a subcontractor's insurance policy made the general contractor an additional insured with respect to liability for injury or damage "caused, in whole or in part, by" the subcontractor's work for the general contractor. *Id.* at 30 (emphasis omitted). Under those terms, the insurer owed a duty to defend the general contractor "as long as [the general contractor] [was] alleged to be liable, in whole or in part, by the acts or omissions of [the subcontractor]." *Id.* at 41. In other words, the insurer "ha[d] a duty to defend [the general contractor] against any liability that could potentially [have been] proximately caused by [the subcontractor's] acts." *Id.* at 43.

During construction, a scaffold collapsed, injuring two employees for another company. *James G. Davis Constr. Corp. v. Erie Ins. Exch.*, 226 Md. App. at 31. The injured employees sued both the general contractor and the subcontractor for negligence, alleging "that the negligence of [the subcontractor], the negligence of [the general contractor], or the negligence of both . . . contributed to the injury[.]" *Id.* at 43. These allegations "demonstrate[d] that the claim of liability against [the general contractor] f[ell] within the additional insured endorsements of the [p]olicy." *Id.* at 45. Furthermore, even if it were "not clear" that the allegations were covered, the allegations "establish[ed]

16

at least the *potentiality* that the claim could be covered by the [p]olicy's endorsements."
*Id.* (citation and quotation marks omitted). Thus, the subcontractor's insurer owed a duty
to defend the general contractor. *Id.*

## C. Extent of Selective Way's Liability Insurance Coverage

To determine whether Selective Way owed a duty to defend Questar in the
construction-defect lawsuit, we first examine "the language and requirements of the
polic[ies]" to determine the extent of coverage. *St. Paul Fire & Marine Ins. Co. v.
Pryseski*, 292 Md. 187, 193 (1981).

For various policy periods between 2001 and 2007, Selective Way sold
commercial general liability insurance to four of Questar's subcontractors. These
policies included standard promises to "pay those sums that the insured becomes legally
obligated to pay as damages because of 'bodily injury' or 'property damage'" and to
"defend the insured against any 'suit' seeking those damages."

The four subcontractors were the "Named Insured[s]" in their respective policies.
In addition, each policy included the following language: "WHO IS AN INSURED is
amended to include as an additional insured any person or organization with whom you
agreed, because of a written contract, . . . to provide insurance . . ., but only with respect
to . . . [y]our ongoing operations,[4] 'your work,' 'your product,' or premises owned or
used by you[.]"

---

[4] Provisions in the Selective Way policies issued before 2003 stated "with respect
to . . . [y]our operations"; while the policies issued during or after 2003 stated "with
respect to . . . [y]our ongoing operations[.]"

Certain policies also included more specific "Additional Insured" endorsements. Some endorsements stated that any person or organization made an additional insured because of a contract would be treated as an insured "only with respect to their liability arising out of 'your work' . . . performed for that insured[.]" Some endorsements stated that any person or organization made an additional insured because of a contract would be treated as an insured "only with respect to their liability for 'bodily injury' or 'property damage' caused, in whole or in part, by 'your work' performed for that additional insured[.]"

Between 2001 and 2003, each of the four subcontractors executed written contracts with Questar to perform construction work at the Highpointe project. Each subcontract required the subcontractor to maintain commercial general liability insurance "with respect to" the subcontractor's work on the project. Each subcontract further provided: "The Subcontractor's coverage shall be primary and noncontributory; [Questar] and [the property owner] . . . shall be named as additional insureds[.]"

Because each subcontractor agreed, in a written contract, to provide insurance for Questar, Questar became an additional insured under each policy "with respect to" the subcontractor's work for Questar. Under the policies in which Questar became an additional insured "with respect to [Questar's] liability arising out of" the subcontractor's work, Selective Way was obligated to defend Questar against any claim grounded on the failure to properly supervise the subcontractor's work. *See Baltimore Gas & Elec. Co. v. Commercial Union Ins. Co.*, 113 Md. App. 540, 562 (1997). Under the policies in which Questar became an additional insured with respect to its liability for injury or damage

18

"caused, in whole or in part, by" the subcontractor's work, Selective Way was obligated to defend Questar against any claim for liability alleged to be proximately caused by the subcontractor's work for Questar. *See James G. Davis Constr. Corp. v. Erie Ins. Exch.*, 226 Md. App. 25, 43 (2015).

### D.  Allegations from the Lawsuit Against Questar

Our focus now shifts to the allegations in the lawsuit against Questar to assess whether those allegations potentially fall within the coverage provided by Selective Way. *See St. Paul Fire & Marine Ins. Co. v. Pryseski*, 292 Md. 187, 193 (1981).

The allegations against Questar are set forth in an original complaint filed in 2006 and an amended complaint filed in 2007. Both complaints concerned "the defective construction of the Highpointe Apartments[.]" In both versions, the plaintiffs sued Questar for breach of a construction contract, negligent construction, and negligent misrepresentation. In each count, the plaintiffs sought $4.5 million for property damage that allegedly resulted from Questar's conduct.

All counts against Questar rested on common allegations that Questar failed to properly oversee and supervise the construction of the Highpointe Apartments. The plaintiffs alleged that two Questar executives supervised "all construction activities with regard to the Highpointe Apartments on behalf of" Questar; that during construction "there were failures to comply with applicable building codes, use of faulty, inferior and unspecified materials, deviations from plans and specifications and unworkmanlike construction that did not meet the minimum industry standards and building practices for construction and design of residential apartments"; that "[t]hese defective conditions . . .

19

resulted in damage to real and personal property, including, but not limited to damages of other portions of the apartment buildings, such as water damage, water infiltration at windows, roofs and exterior walls"; and that Questar "knew" or "should have known" of "the existence of these defects" but either "failed to" repair the defects or made ineffective repairs that "exacerbated" the problems.

The breach of contract count included an allegation that Questar breached its obligations "to use its best skill and attention to supervise and direct the work[,]" and "to be responsible . . . for acts and omissions of its employees, subcontractors and their agents and employees, and other persons performing portions of the work on behalf of [Questar] or any of its subcontractors[.]"  In the negligence count, the plaintiffs claimed that Questar, through "its officers, agents and employees," failed to exercise ordinary care, "in that among other things" Questar "failed to properly supervise, oversee, direct and/or inspect the development and construction" and "was otherwise negligent in constructing, supervising, directing, inspecting, repairing, overseeing and approving the development and construction of the Highpointe Apartments[.]"  In the misrepresentation count, the plaintiffs alleged that Questar, "through its principals, agents, servants and employees" made false representations that the work was free from defects.

These allegations show that Questar had been sued "with respect to" the work of its subcontractors, sued for "liability arising out of" the work of its subcontractors, and sued for property damage alleged to be "caused, in whole or in part, by" the work of its subcontractors.  *See James G. Davis Constr. Corp. v. Erie Ins. Exch.*, 226 Md. App. 25, 44-45 (2015).

20

The plaintiffs did not confine their allegations to the work of any particular subcontractor or group of subcontractors, but the complaints did include a description of the allegedly defective work:

> The defective conditions at the Highpointe Apartments included, but [were] not limited to, those which were discovered in the exterior roof systems, vent stacks, flashing, exterior walls, plumbing systems, gutter, downspouts, masonry veneer walls, exterior siding, exterior insulations and finish systems, windows, expansion joints between garages and residential buildings, grading and other site conditions, and other areas of the Highpointe Apartments.

> By way of example, construction deficiencies at the Highpointe Apartments include an absence of through-the-wall flashing at the brick / siding interface; absence of through-the-wall flashing at the base of the brick façade; improper below ground foundation waterproofing; incomplete and/or defective installation of below ground drainage system; improper flashing of windows; improper roof flashing; a failure to properly construct expansion joints between the two garages and the adjoining residential buildings; improper installation and construction of sealant joints at garage roof decks; improper sealant materials at windows; lack of through-the-wall flashing at the concrete masonry / siding interface on the rear of the residential buildings facing the garage; and the potential defective construction of retaining walls.[5]

When Nationwide moved for summary judgment, Nationwide provided copies of the subcontracts, which included descriptions of the work performed by each subcontractor. SEH Excavating Contractors performed "land development work" at the project, including earthwork, paving work, and the installation of a retaining wall system, water lines, storm drain lines, and utility lines. Streett's Waterproofing performed "[a]ll

___

[5] In support of its motion for summary judgment, Nationwide also offered the plaintiffs' interrogatory responses from the construction-defect lawsuit. The interrogatory responses include allegations that are consistent with, and more detailed than, the allegations from the complaints.

21

waterproofing work" for the apartment buildings and two garages, which involved treating the foundation walls with a waterproofing spray. Justice Waterproofing installed a waterproofing system for a tennis court on the roof of one garage, including "sealant work" and the installation of "expansion joints at sheet flashings." King Carpentry Contractors performed "rough carpentry work" at certain buildings, which included installing all exterior doors and windows and setting them in sealant.

The allegations of defective work, when viewed alongside these descriptions of the work performed by the subcontractors, together "demonstrated a reasonable potential that the issue triggering coverage" would "be generated at trial" in the construction-defect lawsuit. *Litz v. State Farm Fire & Cas. Co.*, 346 Md. 217, 231 (1997). The possibility that some damage resulted from one of the four subcontractors' work for Questar "create[d] a potentiality of coverage and entitle[d] [Questar] to a defense" in the suit. *Id.* It is true that the complaints included allegations of defects in work not performed by those four subcontractors and of additional negligence by Questar. It is also true that Selective Way might ultimately have been found not to have any obligation to indemnify Questar if Questar incurred liability. Yet the "mere possibility" that Selective Way might need to indemnify Questar was enough to trigger Selective Way's duty to defend. *See Commercial Union Ins. Co. v. Porter Hayden Co.*, 116 Md. App. 605, 688-89 (1997). Because "some of the allegations" concerned work covered by the Selective Way policies, the allegations triggered Selective Way's duty to defend Questar, an additional insured. *See id.* at 692.

In summary, the circuit court correctly determined, based on the parties'

22

submissions with their summary judgment motions, that Selective Way "had a duty to defend Questar because the allegations in the underlying lawsuit raised claims that potentially arose from the [s]ubcontractors' work at the Highpointe Apartments."

### E.     Limitations on the Additional-Insured Coverage for Questar

Selective Way nonetheless contends that the lawsuit fell outside of the provisions under which Questar became an additional insured. Selective Way draws our attention to two types of coverage limitations: provisions concerning the time of covered activities and provisions concerning the location of covered activities.[6]

As mentioned previously, the coverage extension provisions in each Selective Way policy amended the definition of "insured" to include any person or organization with whom the subcontractor agreed, because of a written contract, to provide insurance. It further stated: "The provisions of this coverage extension do not apply unless the written contract or agreement has been executed prior to . . . the 'property damage[.]'"

Justice Waterproofing executed a subcontract with Questar on September 17, 2003; and King Carpentry Contractors executed a subcontract with Questar on October 28, 2003. Selective Way asserts that the plaintiffs in the construction-defect lawsuit alleged that damages first appeared "as long ago as early 2003," and thus before

---

[6] Selective Way did not rely on either of these coverage limitations when it opposed Nationwide's motion for summary judgment and cross-moved for summary judgment. Selective Way first made an argument about time restrictions in a motion for judgment at the close of all evidence. Selective Way first made an argument about location restrictions in a motion for judgment notwithstanding the verdict. The latter argument is, therefore, unpreserved. *See, e.g.*, *Davis v. Board of Educ. for Prince George's Cty.*, 222 Md. App. 246, 264-66 (2015) (applying Md. Rule 2-532(a)).

execution of those two subcontracts.

In fact, however, the complaints made no allegation that property damage occurred in "early 2003." The original complaint stated that construction "began in 2002 and was completed in 2004[,]" and that "during construction" Questar either knew or had reason to know of defects that "were and would continue to be a major source of water entry into the exterior walls, roofs and interiors of the apartment buildings." The complaint alleged that Questar knowingly failed to disclose the existence of defects when it sold the property around "December 2003." The complaint went on to allege that much of the property damage became apparent after the sale. The complaint also mentioned that the plaintiffs discovered evidence of "a dated water entry problem" sometime during 2005.

With no clear allegation, the complaint left open the possibility that some or all of the property damage occurred after the execution of subcontracts in September and October of 2003. The allegations, therefore, showed a potentiality of coverage and triggered Selective Way's duty to defend Questar. *See Chantel Assocs. v. Mount Vernon Fire Ins. Co.*, 338 Md. 131, 146 (1995) (holding that insurer had duty to defend where "the complaint did not allege the date of initial injury" and thus "le[ft] open the potentiality that the . . . plaintiffs' . . . injuries occurred during the [insurer's] policy period"); *see also Hartford Accident & Indem. Co. v. Sherwood Brands, Inc.*, 111 Md. App. 94, 107-08 (1996) (holding that insurer had duty to defend where "[o]ne [could not] tell by reading the . . . complaint" whether the allegations occurred within the policy period), *vacated on other grounds*, 347 Md. 32 (1997).

24

Because the original complaint from 2006 established a potentiality of coverage under these policies, Selective Way had a duty to defend Questar "from the time the action was commenced." *Chantel Assocs. v. Mount Vernon Fire Ins. Co.*, 338 Md. at 145-46. The duty continued until "the claim might be confined to non-covered allegations." *Baltimore Gas & Elec. Co. v. Commercial Union Ins. Co.*, 113 Md. App. 540, 573 (1997) (citation and quotation marks omitted).

The amended complaint, filed in 2007, was even less specific about the date of the initial property damage. Thus, the amended complaint continued to show a potentiality of coverage under the policies issued to each of the four subcontractors. *See Chantel Assocs. v. Mount Vernon Fire Ins. Co.*, 338 Md. at 146.

Selective Way looks well beyond the formal pleadings in asserting that the alleged property damage predated the execution of subcontracts in September and October of 2003. At trial, Selective Way elicited testimony about a letter from Questar's opponents, created shortly before the settlement of the lawsuit, which mentioned reports of water infiltration in February, April, May, and December of 2003. Whatever the letter may have said,[7] it certainly was not a formal amendment of the complaint. Nor is there any indication that this letter was somehow "the functional equivalent of an amendment of the complaint" (*Baltimore Gas & Elec. Co. v. Commercial Union Ins. Co.*, 113 Md. App.

---

[7] The letter has not been reproduced in the record extract. Selective Way relies on portions of the trial transcript in which it cross-examined Questar's attorney about the letter. The transcript indicates that a copy of the letter was introduced into evidence, but Selective Way's trial exhibits are not part of the record that was transmitted to this Court.

25

at 572) or "tantamount to an amendment of the allegations." *Id.* at 568. There is no basis to conclude that, by sending the letter, Questar's opponents confined their allegations to damages that predated Questar's coverage under the policies issued to two of the subcontractors, Justice Waterproofing and King Carpentry Contractors. The pleadings that created the potentiality of coverage and a duty to defend remained viable.

As a separate argument, Selective Way contends that it had no duty to defend Questar under policies that restricted the additional-insured coverage to work at designated locations. As an "example," Selective Way refers to the endorsement from a policy covering Justice Waterproofing in 2003.[8] That endorsement states that the person or organization made an insured because of a contract would be treated as an additional insured "only with respect to their liability arising out of 'your work' at the location designated and described in the Schedule of this endorsement performed for that insured[.]" The accompanying schedule lists the "Location" as "Various."

Selective Way argues that, because the site of the Highpointe project was not listed on the schedule of locations, Questar did not become an additional insured under this endorsement. This argument is meritless. A reasonably prudent person purchasing insurance would understand that, by designating the location of work as "Various," the policy imposed no location-based restriction on the additional-insured coverage. Otherwise, the entire endorsement would become meaningless, because it would deny

---

[8] Selective Way tells us that the policies covering SEH Excavating Contractors and Streett's Waterproofing included this same restriction. The excerpts included in the record extract in no way support that assertion.

26

coverage arising out of work at every location not specifically listed.

If Selective Way intended to deny additional-insured coverage at all locations, it needed to communicate that intention clearly. "Drafters of insurance policies have it within their power to draft policies . . . so that exclusions and coverage options are not open to more than one inference or interpretation." *Nationwide Mut. Fire Ins. Co. v. Tufts*, 118 Md. App. 180, 189 (1997). An insurer "must use clear and unambiguous language to distinctly communicate the nature of any limitation of coverage to the insured." *Megonnell v. United Servs. Auto. Ass'n*, 368 Md. 633, 656 (2002) (citation and quotation marks omitted). The provision purporting to limit coverage to various, unspecified locations is "ineffective to remove coverage otherwise granted by the insuring agreements." *Id.* (citation and quotation marks omitted).

Selective Way was not entitled to a judgment in its favor based on either time-based restrictions or location-based restrictions on the additional-insured coverage. The circuit court did not err when it declared that Selective Way had a duty to defend Questar under each of the identified policies.

F. **Sufficiency of the Written Declaration**

In addition to challenging the correctness of the declaratory judgment, Selective Way asserts that the circuit court failed to issue a proper "written declaratory judgment defining the rights and obligations of the parties." *Salamon v. Progressive Classic Ins. Co.*, 379 Md. 301, 307 n.7 (2004). Selective Way criticizes the court, at some length, for failing to issue a more "detailed" declaration. At the same time, Selective Way offers only vague hints about what details it believes should be added. Without supporting

27

authority, Selective Way suggests that the court was "required" to make and declare "finding[s] as to the dates of loss, the dates of agreement, and other fact-specific matters for each subcontractor and each carrier."

A declaratory judgment "need not be in any particular form," but "it must pass upon and adjudicate the issues raised in the proceeding, to the end that the rights of the parties are clearly delineated and the controversy terminated." *Messing v. Bank of Am., N.A.*, 373 Md. 672, 703 (2003) (citation and quotation marks omitted); *see also Jennings v. Government Emps. Ins. Co.*, 302 Md. 352, 355 (1985). By the time the court issued its declaratory judgment, Nationwide's claims against all defendants other than Selective Way had been dismissed, and so the controversy was limited to those two remaining parties. To terminate a controversy such as this one, the declaration should state that the insurer was required to provide a defense in the underlying action, that the insurer is required to pay the costs of defending the underlying action, and that the insurer is required to pay the expenses incurred in the declaratory judgment action to establish the insurer's duty to defend. *See Lloyd E. Mitchell, Inc. v. Maryland Cas. Co.*, 324 Md. 44, 63 (1991).

The level of detail in the circuit court's declaratory judgment was entirely appropriate for resolving the dispute over Selective Way's obligations. Nevertheless, because the court also incorporated its damage awards into the declaratory judgment (some of which are subject to change, consistent with the remainder of this opinion), it will be necessary for the court to issue a revised declaratory judgment after further proceedings. Any revisions to the declaratory judgment should relate solely to the

28

amounts of Selective Way's liability.

## II.    Damage Award for the Costs of Defending the Underlying Lawsuit

Although Selective Way denies that it owed any duty to defend Questar, most of its arguments concern the damages for breaching that duty. Selective Way contends that, if it owed a duty to defend Questar in the construction-defect lawsuit, it had no duty to defend the "entire" suit and no obligation to pay all defense costs. Selective Way also disputes whether Nationwide, as an insurer for Questar, has the right to be reimbursed for all of those costs. Selective Way argues that it is entitled either to a judgment in its favor or to a new trial under a different framework for determining its liability.

The premises of these arguments are faulty, and so are the conclusions. As explained below, the circuit court did not err in permitting the jury to find Selective Way liable for all costs incurred by Nationwide in the defense of Questar.

### A.    Selective Way's Duty to Defend the Entire Action

At least since the Court of Appeals decided *Brohawn v. Transamerica Insurance Co.*, 276 Md. 396 (1975), liability insurers doing business in this State have been on notice that they often must defend the insured in a suit where some allegations are potentially covered by a policy even though other allegations are not. In *Brohawn* the Court determined that the insurer owed a duty to defend a suit based on allegations that the insured either intentionally assaulted or negligently injured the plaintiffs. *Id.* at 407-10. Even though the policy did not cover intentional misconduct by the insured, the insurer was obligated to assume the reasonable costs of defending the entire action. *Id.* at 414-15.

29

The potentiality rule "give[s] effect to the duty to defend where the allegations . . . present claims both within and without the policy[.]" *Continental Cas. Co. v. Board of Educ. of Charles Cty.*, 302 Md. 516, 528 (1985) (citing *Brohawn v. Transamerica Ins. Co.*, 276 Md. at 408). "Under Maryland's comprehensive duty to defend, if an insurance policy potentially covers any claim in an underlying complaint, the insurer . . . must typically defend the entire suit, including non-covered claims." *Perdue Farms, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 448 F.3d 252, 258 (4th Cir. 2006).[9] Maryland law on this point is in harmony with the law in a majority of jurisdictions. *See* 14 *Couch on Insurance* § 200:25 (3d ed. 2019) ("an insurer's duty to defend extends to the entire action, which includes covered, potentially covered, and uncovered allegations within the claim"); 16 *Williston on Contracts* § 49:105 (4th ed. 2019) ("[w]hen even one of multiple claims potentially falls within the policy, the insurer has a duty to accept the defense of the entire lawsuit, even though the remainder of claims fall clearly outside the policy").

This Court has repeatedly explained that, "if any claims potentially come within the policy coverage, the insurer is obligated to defend all claims, notwithstanding alternative allegations outside the policy's coverage, until such times . . . that the claims have been limited to ones outside the policy coverage." *Utica Mut. Ins. Co. v. Miller*,

---

[9] *Accord Gemini Ins. Co. v. Earth Treks, Inc.*, 260 F. Supp. 3d 467, 477 (D. Md. 2017); *Ellicott City Cable, LLC v. Axis Ins. Co.*, 196 F. Supp. 3d 577, 586 (D. Md. 2016); *Marvin J. Perry, Inc. v. Hartford Cas. Ins. Co.*, 615 F. Supp. 2d 432, 434 (D. Md. 2009); *Parts Inc. v. Utica Mut. Ins. Co.*, 602 F. Supp. 2d 617, 620 (D. Md. 2009); *Nautilus Ins. Co. v. BSA Ltd. P'ship*, 602 F. Supp. 2d 641, 656 (D. Md. 2009); *Hartford Cas. Co. v. Chase Title, Inc.*, 247 F. Supp. 2d 779, 782-83 (D. Md. 2003); *Warfield-Dorsey Co., Inc. v. Travelers Cas. & Sur. Co. of Illinois*, 66 F. Supp. 2d 681, 688 (D. Md. 1999).

130 Md. App. 373, 383 (2000) (citations and quotation marks omitted); *see also*

*Blackstone Int'l Ltd. v. Maryland Cas. Co.*, 216 Md. App. 471, 481 (2014), *aff'd in part,*

*rev'd in part on other grounds*, 442 Md. 685 (2015); *Back Creek Partners, LLC v. First*

*Am. Title Ins. Co.*, 213 Md. App. 703, 714-15 (2013); *Montgomery Cty. Bd. of Educ. v.*

*Horace Mann Ins. Co.*, 154 Md. App. 502, 512 (2003), *aff'd*, 383 Md. 527 (2004); *Zurich*

*Ins. Co. v. Principal Mut. Ins. Co.*, 134 Md. App. 643, 650 (2000); *Hartford Accident &*

*Indem. Co. v. Sherwood Brands, Inc.*, 111 Md. App. 94, 106 (1996), *vacated on other*

*grounds*, 347 Md. 32 (1997).

The construction-defect lawsuit here involved "alternative allegations" (*Utica*

*Mut. Ins. Co. v. Miller*, 130 Md. App. at 383) inside and outside of Selective Way's

coverage. The plaintiffs alleged one set of injuries (property damage from water

infiltration) with one or more potential causes (construction defects throughout various

parts of the buildings). Although Selective Way might have reason to doubt that the

waterproofing work, land development work, and rough carpentry work of four

subcontractors proximately caused all of the alleged damages, the complaints made no

such distinction. Because the complaints expressly alleged that these alleged defects

caused the alleged property damage, the suit was potentially covered under Selective

Way's policies even if the allegation of causation was groundless. *See Sheets v. Brethren*

*Mut. Ins. Co.*, 342 Md. 634, 644 (1996).

Selective Way concedes that, "[i]n general, if there are covered and non-covered

counts in one lawsuit. . . . an insurer must defend both counts." Nonetheless, Selective

Way argues that this principle is limited to situations where a plaintiff pleads alternative

31

legal theories arising out of the same incident or conduct. No such limitation appears in *Brohawn* or the cases that have followed it.

Rather, the Court of Appeals has held that the duty to defend extends to an entire lawsuit even where most of the allegations concern additional conduct outside of the policy. In *Montgomery County Board of Education v. Horace Mann Insurance Co.*, 383 Md. 527 (2004), the Court held that a county board of education owed a duty to defend a teacher from a lawsuit based almost entirely on sexual-abuse allegations for which no coverage existed. By statute, the board was required to maintain private insurance or self-insurance for school employees (*id.* at 538-39) with "the same duty to defend as would exist under a standard" liability insurance policy in the private market. *Id.* at 541. Because the board had no duty to defend claims for malicious conduct or conduct outside of the scope of employment (*id.* at 542), the board would have had no duty to defend a suit in which the allegations "established only a charge of sexual abuse[.]" *Id.* at 545. The "'gravamen' of the allegations" against the teacher related to sexual abuse, but the complaint also included allegations that the teacher had abused her authority in other ways. *Id.* at 547. Some counts, "though certainly focusing on the sexual abuse, . . . potentially could be construed to include the non-sexual conduct[.]" *Id.* at 548. The Court concluded that "there was a potentiality of coverage for [the teacher], at least with respect to" to two of the counts; "therefore" the board had a duty "to defend the entire action." *Id.*

Selective Way misconceives of its promise to defend suits against its insured as a more limited promise to pay a portion of the defense costs attributable to covered

32

allegations. Throughout this case, Selective Way repeatedly invoked *Continental Casualty Co. v. Board of Education of Charles County*, 302 Md. 516 (1985), to illustrate the "apportionment of litigation expenses between covered and noncovered claims." *Id.* at 525. There, however, the policy provisions "relating to defense [were] substantially different from the duty to defend clause of a conventional liability policy." *Id.* at 530. The policy was a form of directors' and officers' liability insurance, under which the insurer had no duty to defend, but merely the obligation to pay fees and expenses for defense of covered claims. *Id.* at 529-31. The Court explained that the breach of this contractual duty is "not the same as a breach of the contractual duty to defend the entire suit under a policy and under a state of facts like those presented in *Brohawn*." *Id.* at 531. For that reason, the insurer was responsible "for the cost of defense attributable to" covered counts, rather than "the reasonable cost of defending the entire . . . suit." *Id.*

To its credit, Selective Way has unearthed two seldom-cited cases in which this Court arguably appeared to endorse a more limited conception of the duty to defend. In the first such case, a contractor's liability insurance policy excluded coverage for the type of property damages alleged in four separate actions against the contractor. *Minnick's, Inc. v. Reliance Ins. Co.*, 47 Md. App. 329, 332-33 (1980). Two of those actions also included allegations of bodily injury, which were "sufficient to obligate [the insurer] to provide a defense to that part of the claim." *Id.* Our predecessors said that there was a potentiality of coverage "at least with respect to the damages claimed" for bodily injury and that the insurer had "a duty to provide [the contractor] a defense . . . with respect to the claims" for bodily injury. *Id.* at 333-34.

33

This Court offered little elaboration on its statement that the insurer owed a duty to defend "part of the claim." *Minnick's, Inc. v. Reliance Ins. Co.*, 47 Md. App. at 333. Selective Way assumes that this statement means that the insurer only needed to pay a portion of the defense costs. The opinion itself, however, says nothing about defense costs. The more sensible interpretation of the statement is that the insurer had the obligation to pay for the defense of the suit "'until such time, if ever, that the claims have been limited to ones outside the policy coverage.'" *Id.* at 334 (quoting *Steyer v. Westvaco Corp.*, 450 F. Supp. 384, 389 (D. Md. 1978)). That interpretation would be consistent with other case law on the subject. *See Utica Mut. Ins. Co. v. Miller*, 130 Md. App. 373, 387 (2000); *Baltimore Gas & Elec. Co. v. Commercial Union Ins. Co.*, 113 Md. App. 540, 573 (1997).

In arguing that the additional insured bears the burden to "apportion" defense costs among the various subcontractors, Selective Way mainly relies on *Loewenthal v. Security Insurance Co. of Hartford*, 50 Md. App. 112 (1981), *cert. denied*, 292 Md. 596 (1982). In that case, the allegations in the underlying suit against an insured contractor "fit[] squarely within" an exclusion for certain property damage (*id.* at 120), but some allegations concerned bodily injury claims, which were not excluded. *Id.* at 121-22. The Court said that the insurer was not "obligated to defend the entire suit," but that it was "obligated to defend that portion of the claim which related to bodily injuries." *Id.* at 123. In a footnote, the Court added: "Although many courts which have addressed the issue have not permitted apportionment of defense costs between the insurer and the insured, the rationale behind these authorities is that an insurer must bear the entire cost

34

of defense only when there is no reasonable means of prorating the costs of defense between excluded and uncovered items.  Such a consideration is not the case here since defense costs can be readily apportioned."  *Id.* at 123 n.5 (citations omitted).

Selective Way cites no Maryland case, before or since *Loewenthal*, using an "apportionab[ility]" test to limit an insurer's duty to defend.  Selective Way nonetheless interprets the final footnote of *Loewenthal* to "set forth" "[w]hat the law requires" in a broad category of cases.  Selective Way theorizes that, where defense costs can be "readily apportioned" between covered and non-covered claims, a liability insurer has no obligation to pay defense costs attributable to non-covered claims.  Extrapolating further, Selective Way theorizes that a breaching insurer is not liable for *any* defense costs, unless the insured affirmatively proves what portion of defense costs related to covered claims.

This expansive interpretation of *Loewenthal* fails to account for other authorities establishing that, "if any claim could potentially be covered" under a policy, then the insurer "is required to defend all of the claims asserted."  *Montgomery Cty. Bd. of Educ. v. Horace Mann Ins. Co.*, 154 Md. App. at 512 (citing *Zurich Ins. Co. v. Principal Mut. Ins. Co.*, 134 Md. App. at 649-50 (quoting *Utica Mut. Ins. Co. v. Miller*, 130 Md. App. at 383)).  To the extent that *Loewenthal* permitted an insurer to pay only a portion of the defense costs, it represents a departure from the general rule.  Such a departure might be appropriate under facts like those in *Loewenthal*, where one entire category of damages was expressly excluded from coverage and one category of damages was potentially covered.  Nonetheless, the general rule prevails where, as here, the potentiality of coverage turns on an issue such as causation, which could only be determined in a trial on

35

the merits of the underlying controversy. *See James G. Davis Constr. Corp. v. Erie Ins. Exch.*, 226 Md. App. at 41 n.4; *Commercial Union Ins. Co. v. Porter Hayden Co.*, 116 Md. App. at 688.

Selective Way also faults the circuit court for declining to follow *Reliance Insurance Co. v. Mogavero*, 640 F. Supp. 84 (D. Md. 1986). In that case, a federal district court determined that the insurer owed no duty to defend a contractor under Maryland law even though the court acknowledged that the complaint could be read as asserting claims covered by the policy. *Id.* at 86-87. The court said that the "gravamen" or "thrust" of the case was excluded from coverage, and it characterized any potentially covered claims as "at most incidental" and "*de minimus*." *Id.* The court reasoned that the insurer had no obligation "to provide a defense for all of the claims" where there was "no potentiality of coverage for the overwhelming majority of them[.]" *Id.* at 87. The court opined: "Perhaps if [a covered] claim were proved [the insurer] could be properly required to cover the claim and compensate [the contractor] for a *pro rata* portion of his attorney's fees incurred in defending that portion of the overall claims." *Id.*[10]

In our assessment, the reasoning of *Reliance Insurance Co. v. Mogavero*, 640 F.

---

[10] Selective Way asked the court to enter judgment in its favor on the ground that the allegations in the construction-defect lawsuit against the four insured subcontractors were "*de minimus*." The argument on that issue, however, addressed only one of the four subcontractors. Selective Way tells us that it asked the court to instruct the jury as follows: "under Maryland law, if the allegations against a subcontractor was [sic] for damages which was [sic] *de minimus* or minor, than [sic] Plaintiff can only recover the amount it proves was expended in defending that potion of the claim related to that subcontractor's work." The written request for that instruction has not been reproduced in the record extract.

36

Supp. at 87, should not be followed. An opinion of a federal district is not binding on the circuit court or on this Court, but at most might be a persuasive authority. *See, e.g.*, *French v. Hines*, 182 Md. App. 201, 262 n.21 (2008). Because "'the reasoning which supports [the court's opinion] fails to persuade, [the opinion is] no authority at all.'" *Jacobs v. Adams*, 66 Md. App. 779, 795 (1986) (quoting *Cates v. State*, 21 Md. App. 363, 372 (1974)).

The federal district court cited no authority, from Maryland or elsewhere, establishing that an insurer has no duty to defend if the allegations creating the potentiality of coverage are "incidental" or "*de minimus*." That statement is at odds with binding pronouncements from the Court of Appeals. *E.g. Litz v. State Farm Fire & Cas. Co.*, 346 Md. 217, 231 (1997) (explaining that the insurer has a duty to defend "[i]f there is a possibility, even a remote one, that the plaintiffs' claims could be covered by the policy"). Indeed, the duty to defend encompasses the entire action even where the non-covered claims are the "'gravamen'" or "focus[]" of the allegations, as long as some allegations "could be construed" to include conduct covered by the policy. *Montgomery Cty. Bd. of Educ. v. Horace Mann Ins. Co.*, 383 Md. 527, 547-48 (2004).

By suggesting that an insured can recover defense costs only after incurring liability for a covered claim, the federal district court was "putting the cart before the horse." *Commercial Union Ins. Co. v. Porter Hayden Co.*, 116 Md. App. 605, 688 (1997). The court was incorrectly "anticipating the ultimate issue of an actual duty to indemnify rather than focusing on the more intermediate and tentative issue of a potential duty to indemnify." *Id.* Moreover, a rule limiting the insured to a "partial right of

37

reimbursement" for defense costs would "serve only as a backdoor narrowing of the duty to defend," which would "erode Maryland's long-held view that the duty to defend is broader than the duty to indemnify" and "undermine the bargain that Maryland courts describe insurers reaching with their insureds." *Perdue Farms, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 448 F.3d 252, 258 (4th Cir. 2006).

By the "clear and unequivocal language" of its promise to defend suits against its insured, Selective Way "assumed the obligation of relieving its insured of the expense of defending an action alleging and seeking damages within the policy coverage." *Brohawn v. Transamerica Ins. Co.*, 276 Md. at 410. "On this record, it is clear that there was a potentiality of coverage for [Questar], at least with respect to" certain allegations "of the complaint, and that there was therefore a duty on [Selective Way's] part to defend the entire action." *Montgomery Cty. Bd. of Educ. v. Horace Mann Ins. Co.*, 383 Md. at 547. The primary damages for "breach of the contractual duty to defend the entire suit" in these circumstances are "the reasonable cost of defending the entire [underlying] suit." *Continental Cas. Co. v. Board of Educ. of Charles Cty.*, 302 Md. at 531.

Although its theories vary, Selective Way's arguments depend upon an erroneous premise that its duty to defend Questar meant that it only needed to pay a fraction of the defense costs. The circuit court correctly denied the requests to determine that Selective Way had no liability for defense costs or to instruct the jury that the proper measure of damages was something less than the reasonable costs of defending the entire suit.

B.      Nationwide's Subrogation Right to be Reimbursed for Defense Costs

In addition to disputing its obligations towards Questar, Selective Way challenges

38

whether Nationwide, as an insurer for Questar, has the right to enforce those obligations under principles of equitable subrogation.[11]

"Equitable subrogation arises by operation of law when a person pays the debt of another under such circumstances that equity entitles that person to reimbursement." *Fireman's Fund Ins. Co. v. Continental Ins. Co.*, 308 Md. 315, 319 (1987). To be entitled to reimbursement, the subrogee must prove that another party was primarily liable for payment of the debt and that the subrogee paid the debt in order to protect its own rights and interests. *Id.* The purpose of this doctrine "is to prevent unjust enrichment, as the party primarily liable on the debt is obligated to pay it." *Poteet v. Sauter*, 136 Md. App. 383, 401 (2001).

A primary liability insurer "generally ha[s] the primary duty of defense." *U.S. Fire Ins. Co. v. Maryland Cas. Co.*, 52 Md. App. 269, 272 (1982) (citation omitted). An excess insurer's duty to defend does not arise until the policy limits of the primary coverage are exhausted. *See Fireman's Fund Ins. Co. v. Rairigh*, 59 Md. App. 305, 323 (1984). An excess insurer that provides a defense is entitled to recover defense costs from a primary insurer that refuses to defend the insured. *See Utica Mut. Ins. Co. v. Miller*, 130 Md. App. 373, 395 (2000). Where an excess insurer provides a defense that

---

[11] Maryland law recognizes three kinds of equitable subrogation: legal subrogation, which arises by operation of law; conventional subrogation, which arises by an express or implied agreement; and statutory subrogation, which arises from a legislative enactment. *See, e.g.*, *Rausch v. Allstate Ins. Co.*, 388 Md. 690, 702 (2005). Because Nationwide relies primarily on legal subrogation, this discussion is limited to that kind of equitable subrogation. It is unnecessary to address Nationwide's alternative theory that it is subrogated to Questar's rights under the terms of its insurance contracts.

another insurer was primarily obligated to provide, the primary insurer must reimburse the excess insurer for the costs of defense, as well as the cost of litigation to establish the primary insurer's duty to defend. *See Rentals Unlimited, Inc. v. Aetna Cas. & Sur. Ins. Co.*, 101 Md. App. 652, 662-64 (1994); *Travelers Indem. Co. v. Insurance Co. of N. Am.*, 69 Md. App. 664, 679-80 (1987).[12]

In deciding whether one liability insurer is primary with respect to another, Maryland courts "'recognize[] that the rights and liabilities of different insurers should depend, as far as possible, upon the specific language of their policies.'" *Nolt v. U.S. Fid. & Guar. Co.*, 329 Md. 52, 60 (1993) (quoting *Consolidated Mut. Ins. Co. v. Bankers Ins. Co. of Pennsylvania*, 244 Md. 392, 396 (1966)). Nationwide correctly observes that this task is relatively simple here, because there is no conflict in the governing instruments: Selective Way's policies make the additional-insured coverage for Questar "primary and not contributory," while Nationwide's policies defined its coverage for Questar as "excess" over any other primary insurance for which Questar was an additional insured.

Selective Way devotes little attention to the policy language that expressly states that its additional-insured coverage is "primary and noncontributory" and that Nationwide's coverage is "excess" over that additional-insured coverage. Instead, Selective Way argues that *Maryland Casualty Co. v. Nationwide Mutual Insurance Co.*, 81 Cal. App. 4th 1082 (Cal. Ct. App. 2000), provides the "appropriate legal analysis" for

---

[12] On the other hand, where two liability insurers both provide primary coverage, they jointly share the obligation to pay for the defense of the insured. *See Nolt v. U.S. Fid. & Guar. Co.*, 329 Md. 52, 65-66 (1993).

construing these policies.

In that case, two insurers paid the costs of defending a suit against their insured; a third insurer did not. *Maryland Cas. Co. v. Nationwide Mut. Ins. Co.*, 81 Cal. App. 4th at 1086-87. The two defending insurers "concede[d] that that their policies were primary[,]" but argued that certain language in one of the third insurer's policies "converted their policies into excess policies[.]" *Id.* at 1089. The California court rejected that interpretation. *Id.* at 1089-90. Consequently, all three insurers "remain[ed] primarily responsible for the defense." *Id.* at 1090. Because the defending insurers were primarily responsible for the defense, they did not have the right to shift the entire cost of the defense to the third insurer by way of equitable subrogation. *Id.* at 1089.

Unlike the policies of the defending insurers in *Maryland Casualty*, the Nationwide policies in this case defined Nationwide's coverage for Questar as "excess" over any other primary insurance for which Questar was an additional insured. Selective Way has failed to demonstrate how Nationwide's policies might be construed as primary under the circumstances. Consequently, the analysis employed in *Maryland Casualty* has no application here.[13]

In addition to showing that Selective Way was primarily liable for the defense of

---

[13] Selective Way also argues that, because Nationwide was the prevailing party in that case, Nationwide should be "estopped from taking a directly inconsistent position in this action[.]" Selective Way's assertion is devoid of merit. There is no contradiction between Nationwide's interpretation of the policy language at issue here under Maryland law and the interpretation of the different policy language in the *Maryland Casualty* case under California law.

Questar, Nationwide's subrogation claim required Nationwide to show that it paid for the defense in order to protect its own rights and interests. *See, e.g.*, *Government Emps. Ins. Co. v. Taylor*, 270 Md. 11, 21-22 (1973). In a bizarre twist, Selective Way insists that Nationwide cannot recover any amounts that it paid in order to protect its own rights and interests. Selective Way argues that the circuit court was required to instruct the jury that "the amount of costs, fees and expenses Nationwide would have incurred or paid as a result of their [sic] own interests and obligations" were "not recoverable[.]" Similarly, Selective Way argues that it is "undisputed" that Nationwide sustained no damages, because Nationwide "admitted" that the costs of defending Questar were no higher than what Nationwide would have paid to protect its own interests.[14]

---

[14] Selective Way touts the following "admission," from an excerpt of the deposition of Nationwide's representative:

> [COUNSEL FOR SELECTIVE WAY:] As Nationwide's representative, if Nationwide was going to be on the hook for 25 percent due to the general contractor's own exposure, was picking up 40 percent of the masonry exposure due to CMI becoming defunct, and apparently not having a carrier, and picking up some unspecified portion because it was actually Questar who switched the flashing, and the flashing was at least a significant problem in this case, is there any evidence that you can point to, or information that you can provide, which would indicate that [bills from the attorneys who represented Questar] would be one penny less given what Questar was confronting in terms of its own exposure, not attributable to any participating subcontractor?
>
> [NATIONWIDE'S REPRESENTATIVE]: No.
>
> [COUNSEL FOR NATIONWIDE:] Objection. Form.

The objection was well founded. The question required the witness to compare the actual cost of defending Questar against some hypothetical cost, but it did not supply the terms of the hypothetical. The preceding questions do not provide any additional

42

Neither this proposed instruction nor the testimony concerned the proper measure of damages. Nationwide's claim did not require any proof that Selective Way's conduct somehow increased the overall cost of defending the lawsuit against Questar: the dispute was over which of the two insurers was obligated for those costs. To recover all of the reasonable and necessary defense costs that it incurred, Nationwide needed to show that it paid those costs in order to protect its own rights and interests (i.e., to prevent its own insured, Questar, from asserting claims against it) and that Selective Way was primarily liable for those costs. The damage award here represents the amount necessary to prevent Selective Way from being unjustly enriched because Nationwide actually paid what Selective Way should have paid.

In yet another attempt to evade basic subrogation principles, Selective Way argues that Nationwide may not enforce Questar's contractual rights because Questar never "assigned" those rights to Nationwide. This argument is unavailing, because Nationwide relied on legal subrogation, not an assignment. Although an assignment can result in conventional subrogation (*see Bachmann v. Glazer & Glazer, Inc.*, 316 Md. 405, 413-14 (1989)), an assignment is not a requirement for legal subrogation. Rather, this form of subrogation arises by operation of law where its elements are met, even without the consent of the subrogor. *See Government Emps. Ins. Co. v. Taylor*, 270 Md. at 21-22; *see also Fishman v. Murphy ex rel. Estate of Urban*, 433 Md. 534, 553 (2013).

---

clarity. The question was so hopelessly unclear that the response cannot be deemed to be an "admission" of anything. A finder of fact could reasonably conclude that this testimony does not have whatever meaning Selective Way ascribes to it.

Overall, we see no error in the circuit court's decision to permit Nationwide to recover, through subrogation, what Questar would have been entitled to recover: the reasonable cost of defending the entire suit.

## C.     **Verdict Sheet Question Concerning the Defense of Late Notice**

Selective Way also contends that it is entitled to a new trial on its liability for defense costs because the verdict sheet did not include a proposed question regarding Selective Way's defense of late notice. This contention is unpersuasive.

Selective Way's policies required its insured to notify Selective Way "as soon as practicable" of any suit against it. As previously mentioned, Questar first asked Selective Way to provide a defense 20 months after the construction-defect lawsuit began.

Maryland law permits an insurer to "disclaim coverage on a liability insurance policy on the ground that the insured or a person claiming the benefits of the policy through the insured has breached the policy . . . by not giving the insurer required notice only if the insurer establishes by a preponderance of the evidence that the lack of . . . notice has resulted in actual prejudice to the insurer." Md. Code (1995, 2017 Repl. Vol.), § 19-110 of the Insurance Article. In its answer to Nationwide's declaratory judgment complaint, Selective Way asserted that "Questar and/or Nationwide ha[d] failed to provide adequate notice" to Selective Way and that this "failure ha[d] caused actual prejudice."

Although delayed notice of the lawsuit was a focal point of the litigation, Selective Way's policies also required another form of notice. Those polices required the insured to notify Selective Way "as soon as practicable of an 'occurrence' or an offense which

44

may result in a claim."  Selective Way asserts that the evidence at trial showed that

"Questar was on notice" that "occurrences . . . were taking place as early as 2003," in the

form of water damage in the apartment buildings.[15]  But aside from the mere passage of

time, which is not sufficient evidence of actual prejudice (*see, e.g.*, *National Union Fire*

*Ins. Co. of Pittsburgh, PA v. Fund for Animals, Inc.*, 451 Md. 431, 455 (2017)), Selective

Way does not explain how it sustained any actual prejudice from delayed notice of the

occurrences.  In any event, the trial court was never called upon to decide that issue,

because Nationwide did not move for judgment on that ground.

At the end of trial, Selective Way submitted a proposed verdict sheet that included

the following question:

> Did Plaintiff prove by a preponderance of the evidence that **BOTH**:
>
> (1) the notice of the loss was provided as soon as practicable (practical), by
> Questar to Selective Way,
>
> **AND**
>
> (2) notice of the lawsuit was provided immediately to Selective Way by
> Questar, pursuant to the notice of loss and lawsuit conditions in the policies
> issued to the subcontractors?
>
> _____ Yes          \_\_\_\_\_ No[16]

---

[15] This statement is not entirely accurate.  Selective Way points to evidence that
the plaintiffs in the construction-defect lawsuit *alleged* that property damage occurred in
2003.  That evidence would be inadmissible to prove the truth of those allegations.

[16] The proposed question misstated the policy requirements in a few minor ways.
The policies did not require notice of "the loss," but notice of "an 'occurrence,'" which
was defined as "an accident including continuous or repeated exposure to substantially
the same general harmful conditions."  Furthermore, the policies did not require the
insured to notify Selective Way of a lawsuit "immediately," but "as soon as practicable."

Rather than use that question, the court adopted a verdict sheet with the following question: "Do you find, by a preponderance of the evidence, that Nationwide timely notified Selective Way of the lawsuit?"

Selective Way contends that the court abused its discretion by declining to use the version proposed by Selective Way. As Nationwide points out, however, Selective Way failed to object to the wording of the notice question that the court actually provided to the jury.

Before submitting the verdict sheet to the jury, the court presented it to counsel and asked them to make known any of their objections to it. Counsel for Selective Way made several specific objections, but did not object to the wording of the question on late notice. Later, after the court gave its instructions to the jury, counsel added: "we would object to the verdict sheet for [the] same reasons mentioned before."

Maryland Rule 2-522 governs the use of special verdict sheets in civil cases. Under this rule, "[i]t is counsel's responsibility to assure that all critical issues are submitted to the jury." *Ver Brycke v. Ver Brycke*, 379 Md. 669, 701 n.15 (2004) (citation omitted). "If the court fails to submit any issue raised by the pleadings or by the evidence, all parties waive their right to a trial by jury of the issues omitted unless before the jury retires a party demands its submission to the jury." Md. Rule 2-522(b)(2)(B). Furthermore, "[n]o party may assign as error . . . the refusal of the court to submit a requested issue unless the party objects on the record before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the objection." Md. Rule 2-522(b)(5). On this record, Selective Way is deemed to have

waived its contention that the court erred by failing to submit the proposed question regarding whether Selective Way received timely notice of the occurrence. *See Weichert Co. of Maryland, Inc. v. Faust*, 419 Md. 306, 316 n.1 (2011).

But even if Selective Way had not waived its objection to the verdict sheet, we would not find any abuse of discretion in the decision not to use Selective Way's proposed alternative. By asking whether Nationwide had proved that it acted with sufficient alacrity in giving notice of the loss or the lawsuit, the question improperly shifted the burden of proof. An insurer, such as Selective Way, that seeks to avoid a coverage obligation based on the breach of a contractual notice requirement, bears the burden of proving that the insured failed to provide the required notice. *See Fund for Animals, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 226 Md. App. 644, 666 (2016). The proposed question created a risk that the jury might decide an issue in Selective Way's favor simply because Nationwide neglected to prove something that it had no burden to prove. For that reason, the court did not abuse its discretion in declining to pose the question to the jury.

### D. <u>Effect of Settlements with Other Defendants</u>

After the jury found Selective Way liable for damages in the amount of $994,719.54, the court reduced the damages by $588,152.00, the total amount that Nationwide received from settlements with other defendants. Selective Way makes two arguments related to this aspect of the judgment. Both lack merit.

Selective Way inaptly asserts that the judgment "reflects" a "joint and several award" of attorneys' fees. To the contrary, the phrase "joint and several" does not appear

47

anywhere in the judgment.

The judgment accurately reflects the actual resolution of the claims in the action. Selective Way is the only defendant found to be liable to Nationwide. Although the court made an interlocutory determination that 11 other insurers owed a duty to defend Questar, Nationwide dismissed its claims against those defendants before any determination of liability. For its part, Selective Way did not assert, let alone prevail on, any cross-claim against those defendants. Thus, because no party ever proved that the other defendants were liable, the court never decided whether multiple defendants were jointly and severally liable. The only liability here is singular.

Selective Way also suggests that Nationwide's agreements to settle and release its claims against other insurers under their respective policies somehow extinguished Selective Way's obligations under its own policies. To the contrary, the courts of this State long ago rejected a presumption that a release of one defendant operates to release all defendants, in favor of the more sensible rule that the intent of the parties controls the scope of a release. *See, e.g.*, *Chicago Title Ins. Co. v. Lumbermen's Mut. Cas. Co.*, 120 Md. App. 538, 553-54 (1998) (discussing *Shriver v. Carlin & Fulton Co.*, 155 Md. 51 (1928)). Selective Way has not even provided copies of the instruments that Nationwide may have executed. To infer from the mere existence of settlement agreements that Nationwide expressed any intent to absolve Selective Way of its contractual obligations for no consideration would be "a gratuitous windfall" that is, in all likelihood, "not remotely contemplated by the parties to the release[s]." *Buckley v. Brethren Mut. Ins. Co.*, 207 Md. App. 574, 598 (2012), *aff'd*, 437 Md. 332 (2014).

### III. Prejudgment Interest on the Defense Costs in the Underlying Action

As explained above, we have rejected all challenges to the underlying damage award of $994,719.54. Selective Way, however, further contends that the trial court erred by adding $430,534.82 of prejudgment interest to the damages awarded by the jury, where the verdict did not include any prejudgment interest. On this point, we agree.

In its declaratory judgment complaints, Nationwide demanded monetary relief in three categories: reimbursement for the costs of defending Questar in the construction-defect lawsuit, prejudgment interest, and reimbursement for attorneys' fees and expenses incurred in prosecuting the declaratory judgment action. At the trial on Selective Way's liability for defense costs, Nationwide did not request any jury instructions on prejudgment interest. Nor did the special verdict sheet proposed by Nationwide include any question regarding prejudgment interest.

The verdict sheet used by the court asked: "What damages, if any, has Nationwide proved by a preponderance of the evidence?" The jury found the total damages to be $994,719.54.

After the dismissal of Selective Way's premature appeal, Nationwide filed a motion to recover attorney's fees incurred in pursuing the declaratory judgment action. A few weeks before the hearing on that motion, counsel for Nationwide wrote a letter to the court regarding prejudgment interest. In the letter, Nationwide asserted that it had previously "asked for prejudgment interest on the $994,719.54 in defense costs," but that

it had not yet "suppl[ied] a calculation" of the prejudgment interest.[17]  Attached to the letter, Nationwide provided a one-page summary of its proposed calculation, a spreadsheet showing a more detailed calculation, and a disk with digital copies of invoices paid by Nationwide to its attorneys.

Nationwide's proposal treated the sum of $994,719.54, representing the jury's damage award for defense costs paid between 2006 and 2009 in the underlying construction-defect lawsuit, as if Nationwide had paid the entire amount on June 30, 2009, "the date the last invoice was paid by Nationwide[.]"  Nationwide calculated interest from that date at the legal rate of six percent but made a series of reductions in the principal amount to account for one monetary settlement reached before that date and four later settlements.  Under that method, Nationwide calculated that the total interest should be $430,534.82 as of the date of the scheduled hearing on attorneys' fees.

After receiving a copy of Nationwide's letter, Selective Way objected to both the manner and substance of Nationwide's request for prejudgment interest.  Selective Way asserted that the court could not grant the request without a formal motion and the opportunity to file a response.  Selective Way also asserted that the court could not award prejudgment interest after the jury rendered a verdict without prejudgment interest.

The arguments at the subsequent hearing on attorneys' fees did not address the pending request for prejudgment interest.

---

[17] The letter does not indicate how Nationwide "asked" for prejudgment interest. According to Nationwide's appellate brief, Nationwide previously sent the court and opposing counsel a proposed judgment that included an award of prejudgment interest in an unspecified amount.  That document does not appear in the record extract or appendix.

A few days after the hearing, the court docketed the parties' letters regarding prejudgment interest. The court then issued an order granting the motion for attorneys' fees, followed by a separate order declaring the parties' rights and directing the entry of final judgment. Among other things, the judgment required Selective Way to pay $994,719.54 for the defense costs incurred in the construction-defect lawsuit, "plus prejudgment interest paid at a rate of 6%, calculated to be $430,534.82[.]"

In a timely motion to alter or amend the judgment, Selective Way asked the court to reverse or vacate the award of prejudgment interest. Selective Way contended that any claim for prejudgment interest needed to be presented to the jury and stated in the verdict. In opposition, Nationwide argued that Selective Way's liability for prejudgment interest was a question of law for the court. The court denied Selective Way's motion to alter or amend, without issuing an opinion. On appeal, Selective Way reiterates its arguments that the award of prejudgment interest was improper.

The "purpose of awarding pre-judgment interest . . . is to compensate the aggrieved party for the loss of the use of the principal liquidated sum due it and the loss of income from such funds." *Harford County v. Saks Fifth Ave. Distrib. Co.*, 399 Md. 73, 95 (2007) (citation and quotation marks omitted).[18] "[P]re-judgment interest as a matter of right is the exception rather than the rule." *Ver Brycke v. Ver Brycke*, 379 Md. 669, 702 (2004). The question of "[w]hether a party is entitled to pre-judgment interest

---

[18] A sum is liquidated if it is "'settled or determined, esp[ecially] by agreement.'" *Baltimore County v. Aecom Servs., Inc.*, 200 Md. App. 380, 430 n.19 (2011) (quoting *Black's Law Dictionary* 949 (8th ed. 1999)).

generally is left to the discretion of the fact finder." *Id.* (citation and quotation marks omitted). Ordinarily, the matter "'should be left to the discretion of the jury,'" except when the court serves as fact finder. *Gordon v. Posner*, 142 Md. App. 399, 437 (2002) (quoting *I.W. Berman Props. v. Porter Bros., Inc.*, 276 Md. 1, 18 (1975)).

"Pre-judgment interest is allowable as a matter of right when the obligation to pay and the amount due had become certain, definite, and liquidated by a specific date prior to judgment so that the effect of the debtor's withholding payment was to deprive the creditor of the use of a fixed amount as of a known date." *Buxton v. Buxton*, 363 Md. 634, 656 (2001) (citations and quotation marks omitted). A plaintiff may be entitled to prejudgment interest as a matter of right "under written contracts to pay money on a day certain, such as bills of exchange or promissory notes, in actions on bonds or under contracts providing for the payment of interest, in cases where the money claimed has actually been used by the other party, and in sums payable under leases as rent[.]" *Id.* On the other hand, prejudgment interest is not permitted "in tort cases where the recovery is for bodily harm, emotional distress, or similar intangible elements of damage not easily susceptible of precise measurement[.]" *Id.* Most contract cases fall "somewhere in between" these two extremes, leaving the decision of whether to award prejudgment interest "well within the discretion of the finder of fact." *Crystal v. West & Callahan, Inc.*, 328 Md. 318, 343 (1992).

Maryland Rule 2-604(a) requires that "[a]ny pre-judgment interest awarded by a jury or by a court sitting without a jury shall be separately stated in the verdict or decision and included in the judgment." In *Fraidin v. Weitzman*, 93 Md. App. 168, 218-20 (1992),

*cert. denied*, 329 Md. 109 (1993), this Court reversed a trial court's decision to award prejudgment interest where the award was not separately stated in the jury's verdict. In that case, the jury received no instructions regarding prejudgment interest. *Id.* at 219. The jury nevertheless "add[ed] the words 'plus interest' after the amount" of compensatory damages in the verdict, and then the trial court included prejudgment interest as part of the judgment. *Id.* at 218.

Under those facts, this Court held: "Absent a clear and separate statement from the jury that the compensatory award should include prejudgment interest, the trial judge erred in awarding it." *Fraidin v. Weitzman*, 93 Md. App. at 220. The Court explained: "Because prejudgment interest is an element of the plaintiff's damages, the decision to include it as part of an award properly lies with the finder of fact." *Id.* at 219 (citation omitted). "The notion that prejudgment interest is discretionary with the fact finder . . . does not authorize a court, once a jury has determined damages, to add to those damages a sum for prejudgment interest." *Id.* In other words, "[i]t is not within the province of the Court to add to the verdict that which was within the province of the jury." *Id.* at 220.

Nationwide argues that the circuit court here did not run afoul of Md. Rule 2-604 or *Fraidin v. Weitzman* when it awarded prejudgment interest on the damages found by the jury. According to Nationwide, this case was an exceptional one in which prejudgment interest was a not a matter for the discretion of the fact finder.

In support of that contention, Nationwide relies on *Sherwood Brands, Inc. v. Hartford Accident & Indemnity Co.* ("*Sherwood Brands I*"), 111 Md. App. 94 (1996),

*vacated*, 347 Md. 32 (1997).[19]  There, this Court vacated a damages award against a liability insurer on the ground that the insured could not recover the defense costs that it incurred before it notified the insurer of the lawsuit.  *Id.* at 119.  This Court went on to hold that the insured was entitled to prejudgment interest as a matter of right on the post-notice defense costs.  *Id.* at 123.

After this Court's ruling, the parties resolved all issues other than the insurer's liability for pre-notice defense costs.  *Sherwood Brands, Inc. v. Hartford Accident & Indem. Co.* ("*Sherwood Brands II*"), 347 Md. 32, 35 n.1 (1997).  On certiorari to review that one remaining issue, the Court of Appeals vacated this Court's judgment, holding that the insurer could be held liable for the reasonable litigation fees and expenses incurred before giving notice to the insurer.  *Id*. at 35.  The Court of Appeals remanded the case for further proceedings consistent with its opinion and with the parties' agreement.  *Id.* at 50-51.

Because the Court of Appeals vacated this Court's judgment and affirmed no part of it, the *Sherwood Brands I* opinion is at most a persuasive authority.  *See West v. State*, 369 Md. 150, 157 (2002).  "[A]nalytically[,]" because a vacated appellate opinion "no longer supports or reflects a viable appellate judgment[,] . . .  such an opinion is not a precedent for purposes of *stare decisis*."  *Id.* (citation omitted).

We are not persuaded by our predecessors' conclusion that an insured is entitled to

---

[19] Nationwide also cites an unreported opinion by a federal court.  It is the policy of this Court not to rely on any unreported federal or state court opinion as persuasive authority.  *See, e.g.*, *Margolis v. Sandy Spring Bank*, 221 Md. App. 703, 718 n.10 (2015).

prejudgment interest, as a matter of right, on amounts paid as attorneys' fees where a liability insurer breached its duty to defend. In *Sherwood Brands I* itself, this Court recognized that prejudgment interest "is usually a jury issue" (*Sherwood Brands I*, 111 Md. App. at 121), but opined that sums paid to attorneys in defense of a lawsuit "seem to fall within the exceptions" to that rule. *Id.* at 122. The latter assertion is unpersuasive in light of other decisions of this Court.

In *Sherwood Brands I*, 111 Md. App. at 121, this Court cited *Maxima Corp. v. 6933 Arlington Development Limited Partnership*, 100 Md. App. 441 (1994), for the content of the exceptions to the general rule that prejudgment interest is usually a jury issue. In *Maxima* this Court held that a tenant was entitled to prejudgment interest as a matter of right on certain incentive payments due under a lease. *Id.* at 460. Writing for this Court, Judge Arrie W. Davis explained that "the tenant incentive payments were a liquidated amount and a sum certain that [the landlord] owed on specific dates pursuant to a contract." *Id.* Judge Davis went on to conclude, however, that "[t]he same logic is not applicable with respect to legal fees." *Id.* at 463. The *Maxima* Court held that a trial court was not required to award prejudgment interest on the amount awarded as attorneys' fees pursuant to the contract. *Id.* The Court explained: "Prejudgment interest was not recoverable as a matter of right on this unliquidated amount[.]" *Id.*[20]

---

[20] In *Sherwood Brands I*, the Court also cited *Brethren Mutual Insurance Co. v. Filsinger*, 54 Md. App. 357 (1983), as additional support for its conclusion that the insured was entitled to prejudgment interest, as a matter of right, on the sums that an insurer should have been paid at an earlier date. There, however, the Court merely held that a trial judge, who was the finder of fact, did not abuse his "broad judicial discretion" in awarding prejudgment interest. *Id*. at 365.

55

The reasoning of *Sherwood Brands I*, 111 Md. App. at 120-23, a non-binding authority, is in conflict with the reasoning of *Maxima*, 100 Md. App. at 458-63, which remains a binding authority. Under *Maxima*, a claim for reasonable and necessary attorneys' fees incurred in litigation is an unliquidated one, i.e. "'one, the amount of which has not been fixed by agreement or cannot be exactly determined by the application of rules of arithmetic or of law.'" *Baltimore Cty. v. Baltimore Cty. Fraternal Order of Police, Lodge No.* 4, 220 Md. App. 596, 664 (2014) (quoting 3 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 7:34 (4th ed. 2008)), *aff'd*, 449 Md. 713 (2016). "[T]herefore, the award of prejudgment interest" on this unliquidated sum "was encompassed within the [factfinder's] discretion." *Maxima Corp. v. 6933 Arlington Dev. Ltd. P'ship*, 100 Md. App. at 463.

Here, the circuit court erred in adding prejudgment interest to the damages awarded by the jury. The court was not authorized to award prejudgment interest where the "allowance of prejudgment interest would have been discretionary with the jury had it been presented to the jury for consideration," where "[n]o such claim was presented to the jury," and where Nationwide did not request such an instruction. *Fraidin v. Weitzman*, 93 Md. App. at 219-20 (citation omitted). The judgment must be reversed (*see id.* at 239) with respect to the award of $430,534.82 for prejudgment interest.

**IV.** **Fees and Expenses Incurred in the Declaratory Judgment Action**

Finally, Selective Way contends that the circuit court erred in granting Nationwide's post-trial motion for $810,556.72 of attorneys' fees and expenses incurred in prosecuting the declaratory judgment action. Selective Way contends that it was

56

entitled to "a proper trial regarding th[ose] damages[.]" *Bankers & Shippers Ins. Co. of New York v. Electro Enters., Inc.*, 287 Md. 641, 662 (1980). We agree.

Before the trial in March 2017, the parties mutually agreed to adjudicate the claim for the defense costs incurred in the construction-defect lawsuit separately from the claim for attorneys' fees and expenses incurred in the declaratory judgment action. Selective Way asserted that it was entitled to separate jury trials on both claims, but Nationwide asserted that the court should decide the second claim without a jury. On the first day of trial, the court said that it would decide, at a later date, whether to submit the second claim to a jury.

After the trial and the dismissal of Selective Way's premature appeal, Nationwide filed its "Motion for Attorneys' Fees." In its motion, Nationwide asked the court, without a jury, to determine Selective Way's liability for attorneys' fees and expenses incurred in the declaratory judgment action. Nationwide claimed that it had incurred a total of $810,556.72 of fees and expenses as of as of July 31, 2017, around the time of the dismissal of the premature appeal. In support of its motion, Nationwide offered: an affidavit from its lead attorney regarding the hours worked and rates charged; an affidavit from an expert, who opined that the work performed was necessary and that the rates charged were fair and reasonable; and a summary of invoices paid by Nationwide during the preceding nine years of litigation.

Opposing the motion, Selective Way argued that it was entitled to a jury trial, or at least an evidentiary hearing, regarding the fees and expenses incurred in the declaratory judgment action. Selective Way disputed whether Nationwide was entitled to recover all

57

fees and expenses sought, noting that much of the work performed by Nationwide's attorneys related to claims against defendants other than Selective Way. Selective Way also submitted affidavits from its expert, who disagreed with Nationwide's assertions that all fees and expenses claimed were necessary and reasonable.

The court denied Selective Way's requests for a jury trial or an evidentiary hearing to determine the amount of attorneys' fees and expenses incurred in the declaratory judgment action. The court proceeded to decide the motion based on the parties' written submissions and on the arguments made at the hearing. Afterwards, the court issued an order granting the motion and ordering Selective Way to pay $810,556.72. The order stated that Nationwide would be permitted to supplement its motion to recover additional expenses that it would continue to incur.

On appeal, Selective Way asks this Court to vacate the award of $810,556.72 and to remand the case for a jury trial on the amount of fees and expenses incurred in the declaratory judgment action.

The parties offer dueling theories on the nature of that award. Selective Way contends that those sums were an element of the damages for breach of the insurance contract, subject to the ordinary standards of proof for damages resulting from a breach of contract. Nationwide contends that the circuit court could award those fees and expenses, without a jury trial or an evidentiary hearing, through what it calls "common law fee shifting."

To some extent, the legal theory for "the Maryland rule[] permitting the recovery of the insured's counsel fees in a declaratory judgment action with the liability insurer . . .

58

'remains unrefined.'" *Collier v. MD-Individual Practice Ass'n, Inc.*, 327 Md. 1, 14 (1992) (quoting *Continental Cas. Co. v. Board of Educ. of Charles Cty.*, 302 Md. 516, 537 (1985)). Nevertheless, the relevant case law overwhelmingly supports the view that the fees and expenses claimed by Nationwide were part of the damages for breach of contract.

Maryland law ordinarily does not permit "'the recovery, as consequential damages, of foreseeable counsel fees incurred in enforcing remedies for' breach of contract." *Bausch & Lomb Inc. v. Utica Mut. Ins. Co.*, 355 Md. 566, 590 (1999) (citation and quotation marks omitted). A liability insurer, however, may be found liable for the attorneys' fees of a party who prevails in litigation to enforce an insurer's duty to defend. *Id.* at 591. Under this "firmly established" exception to the general rule that all parties must bear their own legal fees, "the insured is entitled to a recovery of the attorneys' fees and expenses incurred" when it "must resort to litigation to enforce" a liability insurer's duty to defend. *Nolt v. U.S. Fid. & Guar. Co.*, 329 Md. 52, 66 (1993).

This exception derives from *Cohen v. American Home Assurance Co.*, 255 Md. 334 (1969). In that case, the Court upheld a trial court's order requiring a liability insurer to pay attorneys' fees and expenses incurred in a declaratory judgment action to establish that the insurer had the duty to defend the policyholder from a negligence suit. *Id.* at 351-63. The Court acknowledged the ordinary rule that, except in special circumstances, attorneys' fees are "not a proper element of damages in an action for breach of contract." *Id.* at 352-53 (citations omitted). The Court nevertheless considered it "unfair to the insured," where "the insured has a contract right to have actions against him defended by

59

the insurer, at its expense," to require the insured to "bear the expense of such litigation" to establish the insurer's obligation, leaving the insured "no better off financially than if he had never had the contract right[.]" *Id.* at 354 (quoting 7A *Appleman Insurance Law and Practice* § 4691 (1962)).

Reviewing out-of-state cases, the Court observed "a decided split of authority on the subject." *Cohen v. American Home Assur. Co.*, 255 Md. at 354. The Court observed that, in the case before it, the insurance policy included a provision "by which the [insurance] company obligated itself to 'reimburse the insured for all reasonable expenses, . . . incurred at the company's request.'" *Id.* at 356. The Court noted that "[s]ome courts ha[d] held such a provision to be a basis for requiring the company to pay attorney's fees." *Id.* On the other hand, "[s]ome courts ha[d] proceeded upon the theory that the attorney's fees in the declaratory judgment action flow from breach of the contract." *Id.* at 358. Ultimately, the Court said that the breaching insurer "produce[s] the current situation when it refuse[s] to defend its [insured]." *Id.* at 363. "Accordingly," the Court said, "whether one speaks in terms of its having authorized the expenditure by its failure to defend or whether one speaks in terms of the attorney's fees for the declaratory judgment action being a part of the damages sustained by the insured by [the insurer's] wrongful breach of the contract," the breaching insurer is "bound to pay the fees incurred by [the insured] in bringing the declaratory judgment action to establish that [the insurer] had not done that which it had agreed . . . to do." *Id.*

The Court of Appeals revisited this exception in *Bankers & Shippers Insurance Co. of New York v. Electro Enterprises, Inc.*, 287 Md. 641 (1980). There, an insurer

60

unsuccessfully sought a declaratory judgment stating that its insurance policy did not require it to defend claims arising out of an airplane crash. *Id.* at 644-46. Afterwards, the defendants in the declaratory judgment action sought reimbursement for the attorneys' fees and other expenses that they incurred in defending themselves in the underlying litigation and in establishing that the insurer had a duty to defend them in that litigation. *Id.* at 646. The trial court determined that those defendants were entitled to the fees and expenses incurred in establishing that the insurer had a duty to defend them, but not for those incurred in the underlying lawsuits. *Id.* at 647. All parties appealed. *Id.*

The Court of Appeals held that the trial court "erred in limiting damages to the fees and expenses incurred in defending the declaratory judgment action." *Bankers & Shippers Ins. Co. of New York v. Electro Enters., Inc.*, 287 Md. at 661. The Court explained that a liability insurer "is liable for the damages, including attorneys' fees incurred by an insured as a result of the insurer's breach of its contractual obligation to defend the insured against a claim potentially within the policy's coverage, and this is so whether the attorneys' fees are incurred in defending against the underlying damage claim or in a declaratory judgment action to determine coverage and a duty to defend." *Id.* at 648 (collecting cases). The Court also explained that the insurer "had breached its contractual obligation to provide a defense in the underlying tort suits and was liable for the resulting damages." *Id.* at 661. The Court reiterated: "the attorneys' fees and expenses, incurred in defending the underlying tort suits and the declaratory judgment action, constitute those resulting damages[.]" *Id.*

The Court further addressed the manner of proving those damages:

61

It is . . . clear from the record, . . . that the informal hearing conducted by the trial court neither required any real proof of the amount of the fees and expenses claimed nor provided [the insurer] with a realistic opportunity to challenge those fees and expenses. This was a case involving claims for attorneys' fees and expenses as damages for a breach of contract, and not one of those relatively unusual types of cases where the trial court is authorized to award the prevailing party in litigation before the court his reasonable attorneys' fees. Consequently, [the insurer] was entitled to have the amount of fees and expenses proven with the certainty and under the standards ordinarily applicable for proof of contractual damages. Instead, the parties merely submitted, prior to the hearing, informal fee and expense petitions and made short, oral representations at the hearing of the amounts claimed. On remand, there should be a proper trial regarding the damages incurred by [the insureds].

*Bankers & Shippers Ins. Co. of New York v. Electro Enters., Inc.*, 287 Md. at 661-62.

Notwithstanding *Bankers & Shippers*, Nationwide contends that the circuit court was not required to hold a jury trial, or even an evidentiary hearing, on the motion for the attorneys' fees. The cases on which Nationwide relies, however, involve claims under fee-shifting statutes rather than contract-based claims. *E.g. Admiral Mortg., Inc. v. Cooper*, 357 Md. 533, 553 (2000) (holding that, under the Maryland Wage Payment and Collection Law "the determination of attorneys' fees, and costs, is for the judge"). Awards for attorneys' fees and expenses incurred in litigation to establish an insurer's duty to defend are governed by a different line of cases that includes *Cohen* and *Bankers & Shippers*.

Nationwide acknowledges that, under *Bankers & Shippers*, defense costs incurred in an underlying lawsuit against an insured are "breach of contract damages." According to Nationwide, however, the fees and expenses incurred in a declaratory judgment action are "[a]ctually" recovered through what Nationwide calls "common law fee shifting."

62

Nationwide suggests that the *Bankers & Shippers* opinion inadvertently "created confusion" by "lumping together the attorneys' fees the insured incurred in defending the underlying tort action and those incurred in defending the declaratory judgment action." This reading is unpersuasive.

The *Cohen* Court declined to say whether attorneys' fees incurred in a declaratory judgment are "part of the damages sustained by the insured" for an insurer's breach of contract. *Cohen v. American Home Assur. Co.*, 255 Md. at 363. The *Bankers & Shippers* Court, on the other hand, clearly stated that attorneys' fees incurred by an insured in litigation to determine the insurer's duty to defend are part of the "damages" resulting from the insurer's breach of contract. *See Bankers & Shippers Ins. Co. of New York v. Electro Enters., Inc.*, 287 Md. at 648, 661. The Court did not appear to be "confus[ed]" when it expressly characterized these fees and expenses as damages for breach of contract. Subsequent opinions have restated that exact proposition of law, without the qualification suggested by Nationwide. *E.g. Litz v. State Farm Fire & Cas. Co.*, 346 Md. 217, 232 (1997); *Allstate Ins. Co. v. Campbell*, 334 Md. 381, 393 (1994); *American Home Assur. Co. v. Osbourn*, 47 Md. App. 73, 83 (1980).

Maryland courts have repeatedly described those fees and expenses as "damages" for breach of contract. *See Mesmer v. Maryland Auto. Ins. Fund*, 353 Md. 241, 264 (1999) ("damages for breach of the contractual duty to defend are . . . the insured's expenses, including attorney fees, in defending the underlying tort action, as well as the insured's expenses and attorney fees in a separate contract or declaratory judgment action . . . to establish that there exists a duty to defend"); *Bailer v. Erie Ins. Exch.*, 344 Md.

63

515, 519-20 (1997) (stating that "the relief now available to the [insureds] consists of damages that have accrued, including counsel fees in the instant [declaratory judgment] action" to establish the insurer's duty to defend); *Nolt v. U.S. Fid. & Guar. Co.*, 329 Md. 52, 68 (1993) (stating that the "attorneys fees and expenses . . . incurred in connection with this [declaratory judgment action] were the direct result of the breach of contract by [the insurer]" and directing the court to "assess those damages" on remand); *Northern Assur. Co. of Am. v. EDP Floors, Inc.*, 311 Md. 217, 222 (1987) (stating, where insured sought to recover fees incurred in declaratory judgment action to establish insurer's duty to defend, that those "fees were sought as damages for breach of the insurance contract"); *Commercial Union Ins. Co. v. Porter Hayden Co.*, 116 Md. App. 605, 703 (1997) (explaining, in a case where insured sought to recover fees incurred in declaratory judgment action to establish insurer's duty to defend, that "when claims for attorneys' fees and expenses are, as in this case, claimed as damages for a breach of contract, the plaintiff must satisfy the standards spelled out in *Bankers and Shippers*").

In our assessment, the Court of Appeals meant what it said. Nationwide was asserting a claim for damages for breach of contract when it moved for an order requiring Selective Way to pay the attorneys' fees and expenses that Nationwide incurred in the declaratory judgment action to prove that Selective Way had breached its contractual duty to defend. That part of the judgment, therefore, must be vacated. On remand, Selective Way is "entitled to have the amount of fees and expenses proven with the certainty and under the standards ordinarily applicable for proof of contractual damages." *Bankers & Shippers Ins. Co. v. Electro Enters., Inc.*, 287 Md. at 661.

Selective Way further argues that the circuit court should have honored its repeated requests to have a jury determine those damages. Selective Way invokes Article 23 of the Maryland Declaration of Rights, which preserves "[t]he right of trial by Jury of all issues of fact in civil proceedings in the several Courts of Law in this State, where the amount in controversy exceeds the sum of $15,000[.]" Under this provision, parties are "constitutionally entitled to have a jury determine the level of damages" for breach of contract claims in which damages are in dispute. *Goldman, Skeen & Wadler, P.A. v. Cooper, Beckman & Tuerk, L.L.P.*, 122 Md. App. 29, 52 (1998). Furthermore, "[t]he fact a proceeding is brought" under the Declaratory Judgment Act "does not affect a right to jury trial which otherwise may exist." Md. Code (1974, 2013 Repl. Vol.), § 3-404 of the Courts and Judicial Proceedings Article. Nationwide has not established that these damages are exempt from the constitutional right to have a jury determine the amount of damages. On remand, therefore, the court should honor Selective Way's jury demand.

In the interest of guiding the remaining proceedings, we shall address a few additional matters. The amount of Selective Way's liability for the attorneys' fees and expenses incurred by Nationwide in the declaratory judgment action remains in dispute. As the party seeking to recover damages for breach of contract, Nationwide bears the burden of proving the amount of damages. To meet that burden, Nationwide must show, by a preponderance of the evidence, that any fees and expenses it seeks to recover were necessary and reasonable. *See Diamond Point Plaza Ltd. P'ship v. Wells Fargo Bank, N.A.*, 400 Md. 718, 757 (2007).

Selective Way correctly observes that it is liable for the fees and expenses incurred

65

"'*as a result* of [its] breach of its contractual obligation to defend the insured[.]'" *Litz v. State Farm Fire & Cas. Co.*, 346 Md. at 232 (quoting *Bankers & Shippers Ins. Co. v. Electro Enters., Inc.*, 287 Md. at 648) (emphasis added). Selective Way argues that much of the work performed by Nationwide's attorneys in the declaratory judgment action did not result from Selective Way's conduct. As Selective Way points out, the defendants in the declaratory judgment action included dozens of other insurers and subcontractors. Selective Way argues, for example, that it should not be required to pay for time that Nationwide's attorneys spent reviewing some other company's insurance policy or attempting to effect service of process on a subcontractor. As the finder of fact, the jury should determine which of the fees and expenses incurred in the action resulted from Selective Way's breach of contract.

Because Nationwide's claim against Selective Way depends on subrogation, Nationwide is entitled to "no greater rights than those possessed by" Questar. *Government Emps. Ins. Co. v. Group Hospitalization Med. Servs., Inc.*, 322 Md. 645, 649 (1991). Yet within the declaratory judgment action, Nationwide also raised a claim *against* Questar, seeking a declaration that Nationwide had no duty to indemnify Questar in the underlying construction-defect lawsuit. Selective Way points out that the award of attorneys' fees included fees for work related to Nationwide's "attempts to disclaim coverage" for Questar. Of course, Questar never possessed any right to assert this claim against itself. *See Rausch v. Allstate Ins. Co.*, 388 Md. 690, 701 (2005). Nationwide, as Questar's subrogee, cannot recover the fees and expenses incurred solely in pursuing a claim against Questar in the declaratory judgment action.

Selective Way can be held liable to Nationwide for the amount that would have put Questar "in as good a position as it would have occupied" had Selective Way performed its contractual obligation. *Continental Cas. Co. v. Board of Educ. of Charles Cty.*, 302 Md. 516, 531-32 (1985). Selective Way can also be held liable for "all services and expenses reasonably related to" the claim against Selective Way in the action. *Id.* at 532. "Legal services and expenses are reasonably related to" the claim against Selective Way "if they would have been rendered and incurred by reasonably competent counsel engaged to" pursue an action "arising out of the same factual background" as did the present action "but which alleged only" the claim against Selective Way. *Id.* "So long as an item of service or expense is reasonably related to" the claim against Selective Way, "it may be apportioned wholly to" the claim against Selective Way, even if the item "would also be of use" to other claims in the action. *Id.* at 534.

The Court of Appeals has explained that, ordinarily, "when separate claims, each allowing fee-shifting, are filed against different defendants, the lawyer must be prepared to establish how much time is allocable to the claims for which fee-shifting is sought against each of the defendants." *Diamond Point Plaza Ltd. P'ship v. Wells Fargo Bank, N.A.*, 400 Md. at 760. Nevertheless, "[i]n drafting pleadings, motions, discovery, or memoranda that concern multiple claims . . . against different defendants, it may not always be possible to make a precise allocation of time or expenses among" claims against different defendants. *Id.* at 761. Similarly, "[a] deposition, a telephone conversation, settlement negotiations, [or] a court proceeding may involve several claims and several defendants." *Id.* Thus, although "a clear delineation in the attorneys' billings

67

of the time spent and expenses incurred with respect to the particular claims" is strong evidence of the amount of fee liability, it is not absolutely required for recovery. *Id.*

As an additional matter, Selective Way believes that it should have no liability for fees and expenses incurred after "August of 2014," when the circuit court made an interlocutory ruling partially granting Nationwide's first motion for summary judgment. This belief is unfounded because, for much of that period, Selective Way was the only active defendant in the action, and nearly all work by Nationwide's attorneys related to overcoming Selective Way's zealous defense. The suggestion that the partial summary judgment ruling somehow ended the dispute over Selective Way's duty to defend is without a shred of merit. Before, during, and after the trial, Selective Way continuously sought to persuade the circuit court to determine that it had no duty to defend Questar. As Selective Way has itself recognized, an interlocutory order granting partial summary judgment remains subject to revision at any time before the entry of final judgment. *See, e.g.*, *Porter Hayden Co. v. Commercial Union Ins. Co.*, 339 Md. 150, 162 (1995). In this very appeal, Selective Way seeks a reversal of the declaratory judgment with the direction to enter a judgment "declaring that Selective [Way] did not have a duty to defend Questar[.]"

Selective Way nonetheless theorizes that a party seeking to recover fees and expenses incurred in litigation to establish an insurer's duty to defend must "apportion between the costs of establishing the duty to defend as opposed to the costs of establishing damages." This theory has no sound basis in Maryland law. The limitation proposed by Selective Way would undermine the very purpose of the remedy, which is to

68

award damages sufficient to "place the plaintiff in a position as good as if the contract had been fully and properly performed from the beginning[.]" *Cohen v. American Home Assur. Co.*, 255 Md. at 359 (citation and quotation marks omitted). This Court does not assess "the entitlement to attorneys' fees incurred in establishing contested coverage . . . on an inning-by-inning basis, but only at the end of the entire game." *Commercial Union Ins. Co. v. Porter Hayden Co.*, 116 Md. App. 605, 715 (1997). "The attorneys fees and expenses which [Nationwide] incurred in connection with this litigation [as] the direct result of the breach of contract by [Selective Way]" include those "incurred by [Nationwide] in connection with the previous proceedings in the circuit court," and those incurred in connection "with the proceedings in [this Court]" in the previous appeal and the present appeal. *See Nolt v. U.S. Fid. & Guar. Co.*, 329 Md. at 68.[21]

## CONCLUSION

The circuit court correctly declared that Selective Way owed a duty to defend Questar in the construction-defect lawsuit. The circuit court did not err in permitting the jury to find Selective Way liable to Nationwide for the reasonable costs of defending the entire suit. The judgment is affirmed with respect to the damage award in the amount of $994,719.54, reduced by $588,152.00 for the amounts that Nationwide received from other defendants.

---

[21] We express no view on whether Nationwide will be entitled to recover the fees and expenses that it incurs on remand in persuading a jury of the costs that it has incurred in pursuing the declaratory judgment action. Similarly, we express no view on whether the jury may decide to award prejudgment interest on any award of fees and expenses if that issue is properly presented to it.

69

Nationwide, however, was not entitled, as a matter of right, to prejudgment interest on the unliquidated claim for defense costs.  The circuit court erred in adding prejudgment interest to the damages awarded by the jury, where the issue of prejudgment interest was not separately stated in the verdict.  The judgment is reversed with respect to Selective Way's liability for prejudgment interest in the amount of $430,534.82.

The judgment is vacated with respect to the determination that Selective Way is liable for $810,556.72 of attorneys' fees and expenses incurred by Nationwide in the declaratory judgment action.  Selective Way is entitled to a jury trial on that element of damages.  On remand, Nationwide has the burden of proving, by a preponderance of the evidence, the amount of reasonable and necessary fees and expenses that it incurred in the declaratory judgment action as a result of Selective Way's breach of contract.

Finally, after the jury trial on the remaining damages, the court should issue a revised declaratory judgment.  The revisions should relate to the amount of damages for which Selective Way is liable.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED IN PART, REVERSED IN PART, AND VACATED IN PART.  CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID FIVE-SIXTHS BY APPELLANT AND ONE-SIXTH BY APPELLEES.**

_____

**APPENDIX**

Selective Way's appellate brief presented the following questions:

A.  Did the Circuit Court err by failing to declare Selective was not liable given the ready apportionability of the costs, and by submitting the legal issue of duty to the jury and/or submitting same without proper instruction?

B.  Did the Circuit Court err in not declaring and/or entering judgment in favor of Selective that it was not liable as Nationwide admittedly incurred no damages due to any alleged breach by Selective?

C.  Did the Circuit Court err in failing to provide the jury with an appropriate proximate cause instruction?

D.  Did the Circuit Court err in: (1) depriving Selective of its right to a jury trial on the contract-based $810,566.72 DJ pursuit costs, and/or err by not even allowing an evidentiary hearing, (2) failing to apportion the DJ costs/fees at all, (3) awarding fees against Selective that are not allowable by law, and/or (4) awarding costs/fees which were indisputably: (i) unrelated to the DJ action at all, (ii) unrelated to establishing the duty to defend, and (iii) unrelated to pursuit of any claim against Selective?

E.  Did the Circuit Court err in allowing a post-verdict *ex parte* letter to serve as the basis for a $441,000 prejudgment interest claim, when that claim had to be made at the initial jury trial, and in depriving Selective of its basic due process rights to notice, opposition and a hearing?

F.  Did the Circuit Court err in failing to properly instruct the jury as the *de minimus* damages defense?

G.  Did the Circuit Court err in failing to provide a declaration as to Selective's policies and insureds, and/or in issuing a one line duty-to-defend finding as to all defendants which did not consider the dates of loss, agreements, scheduled locations *vel non* or other fact specific issues?

H.  Did the Circuit Court err in treating the claim as one of joint and several liability in a contract setting when there was no evidence of concerted action, and thus also failing to reject Plaintiff's equitable subrogation approach, when the subcontracts and policy provisions were

_____

limited by "only with respect to," "arising out of," and/or "cause by" clauses?

I.      Did the Circuit Court err in not granting judgment against Nationwide upon its equitable allocation claim and/or not holding that Nationwide was estopped by its prior admissions?

J.      Did the Circuit Court err in failing to submit the distinct issue of late notice of the loss (as opposed to late notice of the suit) to the jury?

K.      Did the Circuit Court err in not granting to judgment to Selective as this was not a joint tortfeasor claim, and the release of one obligor served to release all?

L.      Did the Circuit Court err in not holding that only Questar had standing to seek the costs of defense, yet as it never assigned this right to Nationwide, and Selective was entitled to judgment the CD action seeking the same fees was dismissed with prejudice?